2005 ME 45

**In re JAMARA R. et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 13, 2005.
Decided: April 1, 2005.

Polly Reeves (orally), Augusta, for appellant.

G. Steven Rowe, Attorney General, Matthew Pollack, Asst. Atty. Gen. (orally), Janice S. Stuver, Asst. Atty Gen., Aria eee, Asst. Atty. Gen., Augusta, for appellee.

Elizabeth McCullum, Augusta, Guardian ad Litem.

Stephen Bourget, Bourget & Bourget, P.A.; Steven A. Parker, Sproul, Stevens & Parker, P.A., Augusta, for fathers.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Jamara was seventeen months old when she was treated at the Maine General Medical Center for a spiral fracture of her left arm. At that time she also suffered from a large human bite mark on her right arm, several bruises on her face, a black eye, and scratches on her chest.

[¶ 2] Following the filing of a preliminary petition for a child protection order by the Department of Health and Human Services,[1] a waiver of the summary preliminary hearing, and a full hearing on the questions of jeopardy and family reunification, the District Court (Augusta, *French, J.*), found that Jamara and her three-month-old brother, Tenney, were in jeopardy and in need of placement in Department custody. Jamara's mother does not contest those findings or conclusions. The court also determined that Jamara's injuries constituted an aggravating factor[2] and that, given the mother's psychological problems and Jamara's needs, the Department should be relieved of its obligation to

1. The new Department of Health and Human Services created by P.L. 2003, ch. 689 (effective July 1, 2004) has replaced the Department of Human Services.

2. *See* 22 M.R.S.A. § 4002(1–B) (2004).

attempt to reunify Jamara with her mother,[3] but should continue to work with the mother toward reunification with Tenney. The mother appeals from the finding of an aggravating factor, and presents due process challenges to the standards by which the court determined that no reunification with Jamara would be required.[4]

[¶ 3] We affirm the finding of an aggravating factor pursuant to 22 M.R.S.A. § 4002(1–B) (2004), and we reject the mother's due process challenge to the statute, see 22 M.R.S.A. § 4041(2)(A–2)(1) (2004). We also conclude that the court acted within its discretion in ordering that the Department need not undertake a reunification effort with Jamara.

## I. BACKGROUND

[¶ 4] On November 6, 2003, Jamara, who was seventeen months old at the time, was brought into the hospital by her mother. There, the doctors determined that Jamara suffered from a spiral fracture of her left arm, multiple bruises of different ages on her face, a human bite mark on her right arm, a black eye, and scratches on her chest. The mother was pregnant with Tenney at the time and subsequently gave birth to him on December 19, 2003. The mother initially explained Jamara's injuries as related to her current boyfriend's attempt to pull Jamara out of a child safety seat in the car. The mother's boyfriend had been convicted of assaulting a child three years earlier. The mother later explained that she believed the original injury to the left arm occurred the previous day when she pulled Jamara up by that arm. She did not seek attention for the injury until the next day when her boyfriend heard a pop as he pulled Jamara out of her car seat. The court found that when the mother was initially interviewed by the police in the emergency room, she was angry and showed no concern for her child's condition. The medical files indicate that the spiral fracture had to have been caused by a violent and forceful act.

[¶ 5] Based on the injuries Jamara had sustained, the Department filed a preliminary protection order alleging that Jamara was in immediate risk of serious harm due to the injuries sustained while in the care of the mother. On December 19, 2003, when Tenney was born, the Department filed a similar protection order on his behalf. The parents consented to both orders and waived the summary preliminary hearings.

[¶ 6] On March 22, 2004, the court held a jeopardy hearing for both Jamara and Tenney. Based on Jamara's injuries and her mother's psychological needs, the court entered a jeopardy order for Jamara and Tenney, placing them in the Department's custody.[5] The mother admitted that jeopardy existed regarding Jamara and does not contest that finding here.

[¶ 7] The Department also asked the court to conclude that it should be relieved of its responsibilities to work with Jamara's mother, thereby ceasing reunification efforts pursuant to 22 M.R.S.A. § 4041(2).

3. See 22 M.R.S.A. § 4041(2)(A–2)(1) (2004).

4. The court entered separate judgments, under separate docket numbers, for the two children. The mother challenges the judgment regarding Tenney only in its determination that an aggravating factor exists. The court also ordered reunification of Jamara with her father. The father has not appealed any aspect of the judgment regarding Jamara.

5. Although this order was entered outside the 120–day limit, see 22 M.R.S.A. § 4035(4–A) (2004), the court had extended the hearing from February to March because it was waiting for paternity test results and the completion of psychological evaluations.

The court made findings specifically related to that issue. First, the court concluded that the treatment that led to Jamara's recent injuries "is 'heinous or abhorrent to society' due to the number of bruises, the nature of the bruises, including a bite mark, and a spiral fracture to the arm of a defenseless child who is approximately one and one-half years old." Despite the mother's insistence that she had inflicted the most serious injuries, the court found that the evidence was not sufficient to make a finding as to who was responsible for the injuries.

> This court is not satisfied that the evidence establishes whether [the boyfriend] or [the mother] abused Jamara .... Whether [the mother] actually inflicted the physical abuse or allowed Jamara to be 'subjected' to abuse by [the boyfriend] makes little difference. By either inflicting the injuries to the child or allowing the child to be abused by [the boyfriend], a known child abuser, [the mother's] behavior meets the statutory requirements for the court to find an 'aggravating factor.'

(citing 22 M.R.S.A. § 4002(1–B)).

[¶ 8] Recognizing that the aggravating factor is not sufficient in the abstract to support the entry of an order ceasing reunification efforts, *see In re Heather C.,* 2000 ME 99, ¶ 25, 751 A.2d 448, 455, the court went on to evaluate the other circumstances in the mother's and child's lives. The court noted that the mother has been diagnosed with a personality disorder and that personality disorders are "difficult to treat and require a large amount of intensive work, commitment, and support. [The mother] has an uphill climb and to say she could parent a child within one year is 'very optimistic' and rapid change should not be expected." The court also found that although the evidence did not establish chronic abuse,

"Jamara is damaged and has special needs based on the way she has been treated during her short life." The court expressed skepticism about the efficacy of the counseling the mother is receiving, particularly since it is not directed at treating the mother's personality disorder.

[¶ 9] Finally, the court concluded that due to the combination of the aggravating factors, the mother's "substantial long-term treatment needs," and Jamara's immediate needs, ceasing reunification between Jamara and her mother is appropriate pursuant to 22 M.R.S.A. § 4041(2)(A–2)(1).

## II. DISCUSSION

[¶ 10] The mother does not challenge the court's jeopardy finding or the need for Jamara and Tenney to be in foster care. Rather, she contends that the District Court erred in allowing the Department to cease any reunification efforts with Jamara. She first argues that the statutory scheme that permits an early cease reunification order based on a determination of the existence of an aggravating factor violates a parent's due process rights. She also challenges the finding of an aggravating factor as to both Jamara and Tenney. Finally, she asserts that the court engaged in an unsustainable exercise of discretion in entering a cease reunification order regarding Jamara. We address each argument in turn.

### A. Due Process

[¶ 11] We first address the mother's argument that an order to cease reunification based on an aggravating factor should be based on clear and convincing evidence, rather than a preponderance of the evidence. We considered this issue serious enough to seek the parties' oral arguments on point.

[¶ 12] We addressed this issue directly in *In re Christmas C.,* 1998 ME 258, 721

A.2d 629. In that case, we held that although the clear and convincing standard is appropriate in the final step of parental rights termination, due process does not compel the application of this higher standard "to earlier, nonfinal[ ] proceedings to protect children." *Id.* ¶ 13, 721 A.2d at 632. Two years later we undertook a detailed review of the competing interests, pursuant to *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), in *In re Heather C.*, 2000 ME 99, 751 A.2d 448. There, we held that no constitutional violation took place when the court followed procedures "well-tailored to protect the [mother's] constitutional rights, while at the same time" protecting the State's interest in determining the child's needs and status without delay, and relieved the Department of any further reunification responsibilities with the mother. *In re Heather C.*, 2000 ME 99, ¶ 32, 751 A.2d at 457 (quotation marks omitted).

■ [¶ 13] The mother urges us to overrule our opinion in *In re Heather C.* Having carefully considered the question, we conclude that no compelling reason has been offered to do so. The doctrine of *stare decisis,* which impels courts to abide by established precedent except in the most extraordinary circumstances, exists to ensure justice that results from certainty and stability. *See Adams v. Buffalo Forge Co.*, 443 A.2d 932, 935 (Me.1982). However, "[w]hen the conditions of society change to such an extent that past judicial doctrines no longer fulfill the needs of a just and efficient system of law, we should not be barred by the constraints of *stare decisis.*" *Myrick v. James,* 444 A.2d 987, 998 (Me.1982) (quotation marks omitted).

[¶ 14] We have been presented no evidence of infirmities in the current standard that convince us of the need to increase the standard of proof necessary for a court to find that Departmental reunification efforts may cease. Additionally, we have identified no legal errors within the aforementioned cases that would persuade us to deviate from those sound and established precedents. Accordingly, we conclude that the analysis set forth in *In re Heather C.* has not lost its vitality, and we decline to accept the mother's invitation to overrule that opinion.[6]

### B.  Aggravating Factor

■ [¶ 15] The mother next argues that the court exceeded the bounds of its discretion when it determined that the aggravating factor provisions applied to the mother's action in this case. We review the finding of an aggravating factor for an unsustainable exercise of discretion, *In re Heather C.*, 2000 ME 99, ¶ 26, 751 A.2d at 455, and again, we reject the mother's argument. Jamara, at seventeen months old, was presented to the hospital with many bruises on her face, scratches on her chest, a substantial bite mark on one arm, and a spiral fracture of the other arm. The spiral fracture was believed by the physicians to have been caused a forceful and violent twisting motion. There can be no question that this toddler was subjected to painful assaults on more than one occasion.

[¶ 16] The infliction of those injuries supports the court's conclusion that Jamara had been treated in a manner that was, in fact, heinous and abhorrent. *See* 22 M.R.S.A. § 4002(1–B)(A)(1). In fact, the court noted that Jamara's injuries were serious enough to meet the definition of aggravated assault pursuant to Maine's

**6.**  The Legislature is empowered to change the burden of proof if it concludes that sound policy would require it.  It has not done so in the five years since we decided *In re Heather C.,* 2000 ME 99, 751 A.2d 448.

criminal statutes. Contrary to the mother's argument, however, it is not necessary for the court to have had before it an actual criminal conviction for the injuries. If the Legislature intended that requirement it would have included such language in section 4041. It did not. Accordingly, we conclude that the court did not err in finding the existence of an aggravating factor.

## C. Exercise of Discretion in Ordering that Reunification Efforts Cease

■ [¶ 17] We review a court's exercise of discretion for three distinct aspects: first, we determine whether the court's factual findings are supported by the record; next, we consider whether the court understood the law applicable to the exercise of its discretion; finally, we determine whether, given all the facts, and applying the appropriate law, the court's weighing of the applicable facts was within the bounds of reasonableness. *See Harris v. Soley*, 2000 ME 150, ¶ 11, 756 A.2d 499, 505; *see also West Point–Pepperell, Inc. v. State Tax Assessor*, 1997 ME 58, ¶ 7, 691 A.2d 1211, 1213; *Comeau v. Maine Coastal Servs.*, 449 A.2d 362, 368 (Me.1982).

[¶ 18] The mother argues that the court exceeded the bounds of its discretion in determining that a cease reunification order was appropriate with regard to Jamara, even if the court did not err in finding that an aggravating factor existed. We have previously concluded that the court did not err in its findings of fact regarding the aggravating factor, and we find no error in other applicable findings of fact. We turn then to the law on point and the court's weighing of the relevant facts.

■ [¶ 19] As we concluded in *In re Heather C.*, when the court is called upon to exercise its discretion in determining whether to order that reunification efforts be ceased, it must consider "both the historical and present circumstances of the family." *In re Heather C.*, 2000 ME 99, ¶ 25, 751 A.2d at 455. Accordingly, when a court has found the existence of an aggravating factor, it "may not consider the aggravating factor in the abstract .... Rather, it must take into account the nature of the aggravating factor and any relevant facts related to a parent's and child's current circumstances." *Id.*

[¶ 20] The court in this case understood that its responsibility was to consider the aggravating factor—Jamara's injuries—in the context of the mother's capabilities and Jamara's needs, and we find no fault with the court's understanding of the law. The court found, based on sufficient evidence, that Jamara's mother suffered from an "avoidant and schizoid personality disorder." The court was understandably skeptical of the mother's ability to address her psychological problems in time to meet Jamara's needs. The mother scored "very very high" on the Child Abuse Potential Inventory scale. Although she had already begun counseling, and was compliant with her medications and attending work regularly, the court concluded that the mother's "substantial long-term treatment needs" would likely preclude her from making the necessary changes rapidly enough to parent Jamara.

[¶ 21] We address then the court's weighing of the operative facts. No one disputes that Jamara was seriously injured. Her mother admitted, perhaps disingenuously, that she inflicted those injuries. Although the court was not sure that the mother was not just covering for a violent boyfriend, her complicity in the infliction of Jamara's injuries is certain, one way or another. There is also no question that Jamara needs a safe home while the court determines whether her mother should be allowed to continue to parent her. The court weighed the num-

ber and the seriousness of the child's injuries and the mother's history of partnering with a convicted child abuser, the psychological characteristics she demonstrates that are common to child abusers, her need for intensive long-term treatment for her personality disorder, as well as the State's "legitimate interest in making the best of its limited resources," *id.* ¶ 29, 751 A.2d at 456, against her bond with Jamara and the fact that there were no previous Department interventions or reports of abuse to this child.

[¶ 22] It is apparent from the court's decision that time was the most determining factor in the court's decision to allow the Department to cease reunification efforts. We take this opportunity therefore to address the pressures of time in these matters more directly. Both the United States Congress and Maine's Legislature have made it clear that timeframes in child protection proceedings must be fitted to a child's needs. Accordingly, once a child has been placed in foster care, a statutory clock begins ticking. In setting that clock, the Legislature has spoken in terms of days and months, rather than in years, as might better fit an adult's timeframe for permanent change.[7] Most important to our consideration here, the statute specifically requires that the Department *must*

file a petition to terminate parental rights when a child has been in foster care for fifteen of the most recent twenty-two months. 22 M.R.S.A. § 4052(2–A)(A) (2004).[8] This brief time period is designed to meet a child's needs for a permanent family. It may, in fact, conflict with a parent's need for longer periods of time to rehabilitate him or herself. Nonetheless, the Legislature has designated the timeframe that the court must keep in mind for all reunification plans and judicial decisions must be informed by that timeframe.

[¶ 23] At the time that the court entered its judgment regarding Jamara, she and her baby brother had been in foster care for almost five months. The mother was not, on the date of the hearing, ready to appropriately parent Jamara and was not likely to be within the year.[9] We find no error in the court's recognition of the restricted timeframe, or in the determination that Jamara's mother would, in fact, face a difficult, uphill climb in attempting to make the necessary changes. The court apparently concluded that the most effective use of that time would instead be the mother's attempt at establishing a relationship with Tenney, and we find no error in that conclusion.

7. *See, e.g.,* 22 M.R.S.A. § 4036–B(3) (2004) (requiring the court to make findings as to whether or not the Department made reasonable efforts to prevent a child's removal within sixty days of removal from the home); 22 M.R.S.A. § 4038(1) (2004) (requiring the court to review cases with findings of jeopardy every six months); 22 M.R.S.A. § 4038(7–A) (requiring the court to conduct a permanency planning hearing within thirty days of a cease reunification order); 42 U.S.C.A. § 671(a)(15)(E)(i) (2003) (requiring states eligible for foster care and adoption assistance payments to hold permanency hearings within thirty days of a determination that reasonable efforts have been made to reunify a family).

8. Although there are exceptions to this mandate, *see* 22 M.R.S.A. § 4052(2–A) (2004), the primary timeframe is established as fifteen out of the most recent twenty-two months. *Id.*

9. At that point she had not completely severed ties with the convicted child abuser she had previously lived with, and although she thought the relationship was over, she still indicated that she had "gotten to trust him more than anybody else." In addition, during one of the Department-supervised visits she grabbed Jamara by her broken, casted arm and lifted her off the ground in an attempt to spank her.

[¶ 24] We are deferential to the trial court's ability to observe the parties and give weight to competing facts, and we conclude that the court did not make a "serious mistake" in weighing the appropriate factors and concluding that the Department should be relieved of its efforts to reunify Jamara and her mother. *See In re Heather C.*, 2000 ME 99, ¶ 26 n. 9, 751 A.2d at 455.[10]

The entry is:

Judgment affirmed.

10. The passage of time may have altered the family's circumstances. For example, if reunification between Jamara and her biological father has been successful, the Department may be under no statutory obligation to promote reunification between Jamara and her mother. 22 M.R.S.A. § 4041(2)(A–2)(2)(b). Also, the Department was not relieved of its responsibility to reunify the mother with Tenney; if she has made substantial, demonstrable progress, she may request reinstatement of the opportunity to reunite with Jamara, if that remains a practical alternative.