2006 ME 67

**In re Matthew W.**

Supreme Judicial Court of Maine.

Argued: May 8, 2006.

Decided: June 12, 2006.

Carolyn A. Adams, Esq. (orally), Smith Law Offices, P.A., Bangor, Noreen L. Nee, Esq., Milford, for appellants.

G. Steven Rowe, Attorney General, Janice S. Stuver, Asst. Atty. Gen. (orally), Gregg D. Bernstein, Asst. Atty. Gen., Matthew E. Pollack, Asst. Atty. Gen., Augusta, for appellee.

Wayne Doane, Esq., Exeter, for Guardian ad Litem.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SILVER, J.

[¶ 1] The parents of Matthew W. appeal from a preliminary protection order and subsequent jeopardy order entered in the District Court (Bangor, *Gunther, J.*), contending that 22 M.R.S. § 4037 (2005), as interpreted by the court, violates their right to due process by authorizing the Department of Health and Human Services to issue a "do not resuscitate" directive (DNR) for Matthew without their consent. The father also contends that there is insufficient evidence to support the court's finding of the existence of an aggravating factor pursuant to 22 M.R.S. § 4002(1–B)(A) (2005), and, therefore, the court erred by relieving the Department of its obligation to pursue reunification efforts with him pursuant to 22 M.R.S. § 4041 (2005). Because we agree that the process resulting in the DNR violated the parents' right to due process, we vacate the court's judgment interpreting the scope of section 4037. We affirm the judgment in all other respects.

## I. BACKGROUND

[¶ 2] Matthew was born on August 18, 2005. Matthew and his parents had significant contact with the Department after his birth due to parenting and bonding issues. Matthew lived with his parents, however, until September 30, 2005. During the early morning hours of September 30, the parents called 911 to report that Matthew was not breathing and to request medical assistance on his behalf. Matthew was taken to Eastern Maine Medical Center, where doctors determined that he was suffering from acute respiratory decompensation, anemia, and intracranial hemorrhages. Based upon the nature of Matthew's injuries, the doctors determined they were "shaken impact" injuries.

[¶ 3] On October 3, the Department petitioned for a child protection order alleging that Matthew was in jeopardy due to "physical abuse, threat of physical abuse, emotional abuse and threat of emotional abuse and neglect and threat of neglect." The Department argued that these allegations were supported by evidence that Matthew's father had shaken and yelled at him, that his mother failed to protect him, that both parents have a history of mental health issues, and that both parents allowed "unsafe individuals" to care for Matthew in their absence. A preliminary protection order was entered on October 3. A summary preliminary hearing was scheduled for October 12, but the parents waived their right to a hearing and consented to the preliminary protection order. On October 12, the court granted the Department custody of Matthew pursuant to 22 M.R.S. §§ 4034(2), 4036(1)(F) (2005).

[¶ 4] On October 20, the doctors treating Matthew met with the parents, the Department, and the guardian ad litem. The doctors reported the extent of the damage to Matthew's brain, and their opinion that he would never advance beyond a state of total dependence on others.[1] Accordingly,

1. At the meeting and during the following week, the doctors described Matthew's brain injuries as "devastating and permanent," and stated that he showed a "marked loss of brain tissue." The doctors concluded that his long-term prognosis was "grim," that he would

they requested a do not resuscitate directive, to which the parents consented. The following day, however, the parents revoked their consent and the DNR was rescinded. Based on the prognosis and recommendations from Matthew's doctors, the Department then unilaterally approved the reinstatement of the DNR. Following the emergency judicial review requested by the Department on October 28, the court entered a finding that 22 M.R.S. § 4037, as a matter of law, authorizes the Department to make all medical decisions, including a decision to approve a DNR. The parents filed a notice of appeal on November 3, challenging only the court's interpretation of section 4037.

[¶ 5] Following a subsequent jeopardy hearing, the court found by a preponderance of the evidence that Matthew was in jeopardy and entered a jeopardy order pursuant to 22 M.R.S. § 4035 (2005). The court ordered that custody of Matthew remain with the Department pursuant to 22 M.R.S. §§ 4035(3), 4036(1)(F). The court also relieved the Department of its obligation to pursue reunification efforts with the father because the court found the existence of an aggravating factor pursuant to 22 M.R.S. §§ 4002(1–B)(A), 4041(2)(A–2). Specifically, the court found it was more likely than not that the father was responsible for Matthew's injuries. The court declined to alter its ruling on the interpretation of section 4037, thus allowing the DNR to remain in place. The father filed a second notice of appeal on March 13. We ordered that the appeals be consolidated.

## II. DISCUSSION

### A. The DNR

[¶ 6] As applied in this case, a DNR means that medical personnel will not per-

form cardiopulmonary resuscitation or use a ventilator to support breathing. On the other hand, a DNR does not prevent medical personnel from providing support or comfort measures, such as medications, oxygen, or the use of a feeding tube.

[¶ 7] The Due Process Clause of the Fourteenth Amendment of the United States Constitution and article I, section 6–A of the Maine Constitution protect a parent's "fundamental and important right to raise one's children." *In re Heather C.*, 2000 ME 99, ¶¶ 21, 23, 751 A.2d 448, 454–55; U.S. CONST. amend. XIV, § 1; ME. CONST. art. I, § 6–A. That protection entails "an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right." *In re Christmas C.*, 1998 ME 258, ¶ 9, 721 A.2d 629, 631 (quotation marks omitted). Due process is a "flexible concept" that requires consideration of: "(1) the private interest affected; (2) the risk of error created by the standard of proof used; and (3) the countervailing state interest supporting use of the challenged standard." *Id.* ¶ 11, 721 A.2d at 631.

[¶ 8] Before the State can terminate parental rights, the dictates of due process require the requisite findings to be made by clear and convincing evidence, after notice and a hearing. *Id.* ¶ 12, 721 A.2d at 632; *see also* 22 M.R.S. §§ 4053, 4054, 4055(1) (2005). Because entry of a preliminary child protection order or jeopardy order infringes upon the parents' fundamental rights rather than terminates them, such an order may be entered based upon a preponderance of the evidence standard. *In re Christmas C.*, 1998 ME

likely suffer ongoing seizures, and that he had very little hope of any "meaningful develop-

ment."

258, ¶ 13, 721 A.2d at 632; *see also* 22 M.R.S. §§ 4034(2), 4035(2). Upon entering a preliminary protection order or jeopardy order, the court may grant custody to the Department, the scope of which is defined by 22 M.R.S. § 4037. *See* 22 M.R.S. §§ 4036(1)(F), 4037.

[¶ 9] Section 4037 provides:

When custody of the child is ordered to the department or other custodian under a preliminary or final protection order, the custodian has full custody of the child subject to the terms of the order and other applicable law. Custody does not include the right to initiate adoption proceedings without parental consent, except as provided under Title 18–A, section 9–302.

22 M.R.S. § 4037. In the present case, the court interpreted section 4037 and determined that "full custody" includes the authority to make all medical decisions, including approval of a DNR.

[¶ 10] The parents argue that approval of the DNR constitutes a de facto termination of their parental rights. Thus, they contend that approval of the DNR violates their right to due process because they were not afforded sufficient notice of the October 28 hearing, or a sufficient opportunity to be heard at that hearing. Furthermore, they contend that the requisite findings, including Matthew's best interest, must be found by clear and convincing evidence before such a termination may take place.[2]

[¶ 11] The right of parents to direct the care and upbringing of their children is unquestionably a fundamental right. *See, e.g., Troxel v. Granville,* 530 U.S. 57, 65–66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

Although we agree with the court that 22 M.R.S. § 4037 grants the Department authority to make medical decisions on behalf of a child who is in its custody, we also agree with the parents that approval of the DNR, without their consent, could have the effect of terminating their parental rights. The decision to withhold or withdraw life-sustaining treatment is a decision of such heightened magnitude that it cannot be said to be within the scope of ordinary medical decisions. Exercise of a DNR over the parents' objections not only infringes upon the fundamental rights of parenthood, but could have the effect of conclusively preventing parents from raising their child or ever again exercising their fundamental rights. Accordingly, we conclude that 22 M.R.S. § 4037 does not authorize the Department to unilaterally approve a DNR except after notice to the parents and, if they object, a right for the parents to be heard. *See Bossie v. State,* 488 A.2d 477, 479 (Me.1985) (reiterating the principle of statutory construction that we will "avoid an unconstitutional interpretation of a statute if a reasonable interpretation of the statute would satisfy constitutional requirements").

[¶ 12] Thus, due process requires that parents be afforded the same procedural protections before approval of a DNR for their child as they are afforded prior to the termination of their parental rights. In a case such as this, when either or both parents, whose parental rights have not been terminated, object to a DNR for their child who is in the Department's custody, the court must provide reasonable notice for a hearing, hold the hearing, and determine, by clear and con-

---

**2.** Although a preliminary protection order is not a final judgment, we do not need to determine whether an exception to the final judgment rule applies in the present case because the court reiterated its interpretation of section 4037 in the subsequent jeopardy order, which is a final judgment, and that was entered prior to our consideration of these consolidated appeals. *See* 22 M.R.S. § 4006 (2005).

vincing evidence, whether it is in the best interest of the child to give the Department the authority to issue a DNR. As part of its assessment, the court should, at a minimum, consider: (1) the child's quality of life, including whether the child is in a persistent vegetative state; (2) what life-sustaining treatment would be necessary; (3) the degree of pain the life-sustaining treatment or the withholding of life-sustaining treatment would cause the child; (4) the long-term prognosis for the child; (5) the opinions of medical experts in regard to the foregoing considerations; and (6) the benefit or detriment to the child if the parents participate in the decision making.

[¶ 13] In the present case, the court held a hearing to determine whether the Department had authority to approve the DNR. Notice of the hearing was provided to the parents only the day before the hearing. No testimony was given at the hearing, however, and the court did not make any findings, let alone any findings by clear and convincing evidence, concerning Matthew's best interest. Rather, the court determined as a matter of law, pursuant to 22 M.R.S. § 4037, that the Department had authority to approve the DNR. Consequently, the requirements of due process were not satisfied.

## B. Aggravating Factor

■ [¶ 14] The father argues that there is insufficient evidence in the record to support the court's finding that he was responsible for Matthew's injuries, and,

therefore, the court's finding of an aggravating factor pursuant to 22 M.R.S. § 4002(1–B).[3] Accordingly, he argues that the court exceeded its discretion by relieving the Department of its obligation to pursue reunification efforts pursuant to 22 M.R.S. § 4041(2)(A–2)(1).

[¶ 15] We do not reach the merits of the father's argument, however, because an order to cease reunification efforts pursuant to 22 M.R.S. § 4041(2)(A–2)(1) is an interlocutory order rather than a final judgment, and, therefore, is not now appealable. *See* 22 M.R.S. § 4006; *In re Johnna M.*, 2006 ME 46, ¶ 7, 903 A.2d 331, 332–33; *In re Erica B.*, 520 A.2d 342, 343 (Me.1987).

The entry is:

Judgment vacated to the extent it interpreted 22 M.R.S. § 4037 to permit the Department to approve a DNR without a hearing. Remanded to the District Court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

---

3. Title 22 M.R.S. § 4002(1–B) (2005) provides, in relevant part:

1–B. Aggravating factor. "Aggravating factor" means any of the following circumstances with regard to the parent.

A. The parent has subjected any child for whom the parent was responsible to aggravated circumstances, including, but not limited to, the following:

(1) Rape, gross sexual misconduct, gross sexual assault, sexual abuse, incest, aggravated assault, kidnapping, promotion of prostitution, abandonment, torture, chronic abuse or any other treatment that is heinous or abhorrent to society.