2009 ME 26

**In re DESTINY T. et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Dec. 12, 2008.
Decided: March 10, 2009.

Alison M. Burton, Esq., Blanchard, Powers & Thibodeau, Arundel, ME, for the mother.

Donna A. Bailey, Esq., Williams–Greco, P.A., Biddeford, ME, for the father.

G. Steven Rowe, Attorney General, Nora Sosnoff, Asst. Atty. Gen., Office of the Attorney General, Augusta, ME, for the Maine Department of Health and Human Services.

Jack Hunt, Esq., Kennebunk, ME, Guardian ad litem.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, MEAD, and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1] The mother of Destiny T., Seth T., and Hope R. and the father of Seth appeal from a jeopardy determination entered in the District Court (Springvale, *Foster, J.*) pursuant to 22 M.R.S. § 4035 (2007).[1] The mother challenges the sufficiency of the evidence to support a jeopardy finding and argues that her constitutional right to due process was violated and the court abused its discretion by refusing to allow fourteen-year-old Destiny to testify. The father contends that the court erred in finding that Seth would be in circumstances of jeopardy in the father's care because the Department did

---

1. A portion of this statute was amended, effective after the court entered its jeopardy order on February 12, 2008. *See* P.L.2007, ch. 513, § 6 (effective June 30, 2008) (codified at 22 M.R.S. § 4035(2–A)(A)(1) (2008)).

not seek, or offer evidence in support of, a jeopardy finding. Although we affirm the determination that the three children were in jeopardy with the mother and reject the mother's due process claim, we conclude that the court erred in determining that Seth was in circumstances of jeopardy with his father.

## I. BACKGROUND

[¶ 2] The court found the following facts, which are supported by evidence in the record.

[¶ 3] The mother and the father are the parents of Seth T., who was eleven years old at the time of the jeopardy hearing. Before the child protection petitions were filed in July 2007, the mother had Seth and two of her other children living in her residence—Destiny, who was fourteen years old, and Hope, who was less than two months old. Pursuant to a court order, the father had visitation rights with Seth.

[¶ 4] In the July 2007 child protection petitions, the Department alleged that the children were at risk of serious harm in the mother's care due to the risk of physical, sexual, or emotional abuse by her cohabitating boyfriend and due to the mother's neglect of that risk. Although the father was named in the petition for protection of Seth, the petition did not make any specific allegations regarding the father but stated only, "At this time, a full assessment needs to be completed on [the father]." The court issued orders of preliminary child protection in which it placed the three children in the Department's custody.

[¶ 5] After waiving the opportunity for a summary preliminary hearing, see 22 M.R.S. § 4034(4) (2008), the court ordered, upon the parties' agreement, that the Department would retain temporary custody of Destiny and Hope, and that the girls would be placed with the mother's great aunt. Seth was placed in the temporary custody of his father, who entrusted Seth's paternal grandparents to shelter Seth in their home.

[¶ 6] The court held a jeopardy hearing at which eighteen witnesses testified. The mother sought to call Destiny as a witness. The court denied the mother's request to allow Destiny to testify, however, because it was concerned that the child had "the sense that it [was] her obligation, in some fashion, to resolve the situation in a positive outcome for herself and her family." The court stated, "I do not believe that . . . whatever additional testimony I would receive under those conditions and under those pressures is going to assist me in making a decision on this matter. . . ."

[¶ 7] At trial, the Department represented that it approved of Seth's residence with his grandparents. A Department worker testified that the father had been "up-front about the fact that his home [was] not safe for Seth," and had refused to allow the Department into his home. The Department worker testified, however, that the father had cooperated with the Department's efforts to provide services to Seth and that the father had agreed that Seth should live with his grandparents. The father did not testify at the jeopardy hearing.

[¶ 8] In its closing argument, the Department indicated that it had not presented evidence as to jeopardy with respect to the father and that the Department had been satisfied with the father's care for Seth. The Department recommended that Seth remain in the father's custody with the understanding that Seth would continue to stay primarily with his grandparents. The father argued in closing that the court should not make a finding of jeopardy with respect to him, that he should retain custody, and that Seth would remain living at his paternal grandparents' home until the father could obtain "a suitable abode."

[¶ 9] The District Court ruled from the bench at the conclusion of the hearing, at which time it found jeopardy with respect to the mother but not the father. The court subsequently issued a written jeopardy order, however, in which it made findings with respect to both the mother and the father. The court found that the children would be in jeopardy with the mother in the absence of the entry of a child protective order for reasons related to her boyfriend's history of perpetrating sexual abuse and domestic violence, and the mother's failure to acknowledge the boyfriend's conduct and to take action to protect her children from exposure to him.

[¶ 10] In its written order, the court also found that Seth would be in jeopardy with the father based on the father's "inability to provide appropriate, stable, reliable care for his son." The court placed Seth in the sole custody of his father, though it ordered that Seth would reside at his paternal grandmother's home or, in her absence, a home designated by the Department. The father unsuccessfully moved for reconsideration of the finding of jeopardy.

[¶ 11] The mother and father both appealed from the jeopardy order.

## II. DISCUSSION

### A. The Mother's Appeal

[¶ 12] The mother challenges the sufficiency of the evidence to support the court's finding that the children would be in jeopardy in her care and argues that the court abused its discretion and violated her due process rights when it denied her request to allow Destiny, then fourteen years old, to testify. We conclude that the court's findings, made by a preponderance of the evidence, were supported by the record and were adequate for the court to reach the ultimate finding of jeopardy as to the mother. *See* 22 M.R.S. §§ 4002(6), (10), 4035(2) (2008); *In re Dakota P.*, 2005 ME 2, ¶ 15, 863 A.2d 280, 285. Specifically, competent evidence in the record supports the court's findings that one of the mother's infant children died mysteriously while in her care, that the mother has failed to protect Destiny from being a witness to serious violent behavior, and that the mother fails to acknowledge the physical and sexual abuse risk that her current boyfriend poses to the children. We further conclude that the court reasonably "balanced the interest of the State in protecting the child with the interest of the parents in maintaining custody" when it determined that Destiny should not be subjected to examination in chambers or in court. *In re Morris D.*, 2000 ME 122, ¶ 6, 754 A.2d 993, 995; *see* 22 M.R.S. § 4007(2) (2008).

### B. The Father's Appeal

[¶ 13] The father challenges the court's entry of an order finding that Seth was in circumstances of jeopardy in the father's custody. He argues that the court lacked any real evidence of jeopardy and that the Department was not seeking such a determination. The father also contends that his choice to have Seth live with his own parents, who live close to the father's home, cannot be considered a deprivation of adequate shelter or care within the meaning of the statutory definition of jeopardy, 22 M.R.S. § 4002(6).[2]

[¶ 14] The court's entry of a jeopardy order must be supported by a

2. The father further argues that the court violated the Due Process Clause of the United States and Maine Constitutions by entering a jeopardy order rather than entering a less restrictive parental rights and responsibilities order as authorized by 22 M.R.S. § 4036(1–A) (2008). Because we vacate the jeopardy order on other grounds, we do not reach this argument.

preponderance of the evidence. *In re Dakota P.*, 2005 ME 2, ¶ 15, 863 A.2d at 285. We review a court's jeopardy finding for clear error, upholding it if any evidence in the record can rationally be understood to establish as more likely than not that the child was in circumstances of jeopardy to his health and welfare. *Id.*

[¶ 15] We conclude that the record in this case is inadequate to support the court's jeopardy order as to the father. The Department did not assert allegations in its petition or argue at trial that Seth was in circumstances of jeopardy in his father's care. The Department bore the burden of producing evidence of jeopardy to justify the issuance of a jeopardy order. *See id.; see also In re Scott S.*, 2001 ME 114, ¶ 14, 775 A.2d 1144, 1149. Because the Department did not assert or offer evidence that Seth was in jeopardy in his father's care, the father was not on notice that he should be preparing a defense against any allegations of jeopardy. With constitutionally protected parental rights at stake, notice and the opportunity to be heard are essential to due process. *In re Matthew W.*, 2006 ME 67, ¶ 7, 903 A.2d 333, 336. Because this record fails to demonstrate that the father was put on notice of the possibility of a jeopardy finding, even by mention at a case management conference, the father's due process rights have been compromised.

[¶ 16] Even assuming the process was adequate, however, the evidence presented was inadequate to establish that Seth was at risk or under threat of serious harm if placed in the father's care. *See* 22 M.R.S. § 4002(6), (10). By all indications, the father cooperated with the Department, and the Department was satisfied with the father's care for Seth. The father's decision to fulfill his custodial duties by sheltering Seth at his parents' home was accepted by all parties as an appropriate one. There is no evidence that this decision deprived Seth of shelter within the meaning of "jeopardy." 22 M.R.S. § 4002(6)(B). Because the facts presented at trial do not establish, by a preponderance of the evidence, that Seth would be in circumstances of jeopardy in his father's care, the court erred in entering the jeopardy order concerning the father, and we vacate that portion of the court's order. To ensure that there is a judicial order establishing the parents' separate rights and responsibilities regarding Seth, the court may consider entering a parental rights and responsibilities order on remand pursuant to 22 M.R.S. § 4036(1–A) (2008).

The entry is:

Judgment affirmed as to the mother. Judgment vacated as to the father. Remanded for further proceedings consistent with this opinion.