2012 ME 140

**In re B.C.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 28, 2012.
Decided: Dec. 20, 2012.

Jeffrey S. Dolley, Esq., Lewiston, for appellant mother.

William J. Schneider, Attorney General, and Nora Sosnoff, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] The mother of B.C. appeals from a jeopardy order entered in the District Court (Lewiston, *Beliveau, J.*) following a testimonial hearing. The mother contends that the court erred in terminating the

Department of Health and Human Services's reunification obligations and in improperly excluding evidence at the hearing. We affirm the judgment.

## I. BACKGROUND

[¶ 2] The court found the following facts, which are supported by competent record evidence, by a preponderance of the evidence. *See* 22 M.R.S. § 4035(2) (2012); *In re Destiny T.*, 2009 ME 26, ¶ 14, 965 A.2d 872. The Department has been involved with the family since at least 2009, when two of the mother's older children were removed from her care through child protection proceedings; the mother consented to the termination of her parental rights as to one of those children because she agreed that she was unable to care for his significant medical needs. A third child is under the guardianship of a paternal family member. As a result of the Department's involvement with the family, the mother has been in individual therapy off and on since 2009. The child who is the subject of this action was born in 2011.

[¶ 3] In therapy, the mother "expressed concerns regarding [her boyfriend's] ability to care for" the child, stating that her boyfriend was impatient with the child, could not console the child, and inappropriately told the infant simply "to stop crying" and that "he was fine." The mother also reported an incident in which the boyfriend threw a bottle at her while she attempted to console the child. The therapist informed the mother that her boyfriend should not be left alone with the child and should not be used as the child's caretaker; the mother agreed.

[¶ 4] Notwithstanding the mother's knowledge of her boyfriend's inability to properly care for the child, on October 28, 2011, the mother asked her boyfriend to come home from work to care for the child

while she slept in the next room. At the time, the child was eleven weeks old. While the child was in the boyfriend's care, the mother heard the child crying incessantly; the mother did not respond until after she heard her boyfriend tell the child to "come on stop crying," followed by sudden silence. At that time, the mother got out of bed and found the child lying unresponsive on the couch. The child had sustained a traumatic and life-threatening skull fracture when the mother's boyfriend threw the child into the couch. The mother called 911 and, when emergency responders arrived just a few minutes later, they found the child lying, barely breathing and still unresponsive, in the mother's arms. Although an emergency responder herself, the mother did not provide any information about how the incident occurred that might have assisted medical professionals.

[¶ 5] The child underwent a rare and "heroic" surgery in which doctors removed a large portion of his skull to allow the brain to swell, and was hospitalized for weeks. At the time of his hospitalization, doctors determined that the child also suffered from retinal hemorrhages consistent with having been shaken *before* he was thrown on the couch. As a result of his injuries, the child is and will be "significantly developmentally delayed and [will] suffer residual neurological deficits," and will continue to require intense medical treatment and services on a long-term basis.

[¶ 6] The mother fails or refuses to recognize the seriousness of the event, and has referred to the skull fracture as "small," suggesting that the brain damage is minor. She has defended her boyfriend's actions as accidental despite the boyfriend's admissions of having thrown the child into the couch. When her boyfriend was indicted on criminal charges for assaulting the child and ordered not to have contact with the mother or the child, the mother nevertheless sought amendment of his bail conditions to allow him to see her; she has also contacted him by letter and through a friend. The mother has prioritized her relationship with the boyfriend over that with her child.

[¶ 7] When the child was well enough to be discharged from the hospital, the Department filed a child protection petition and request for a preliminary protection order seeking custody of the child. The court granted a preliminary protection order placing the child in Department custody. *See* 22 M.R.S. §§ 4034(2), 4036(1)(F) (2012). It later conducted a testimonial summary preliminary hearing, found that the child was in immediate risk of serious harm due to the mother's inability to protect him from physical abuse, and issued an order maintaining custody with the Department. *See* 22 M.R.S. § 4034(4) (2012).

[¶ 8] In February of 2012, the court conducted a full testimonial hearing, after which it issued an order finding jeopardy as to the mother and maintaining custody with the Department. *See* 22 M.R.S. §§ 4002(6), 4035 (2012). The court also found that the mother's actions exposed the child to treatment that is abhorrent to society, which constitutes an aggravating factor pursuant to 22 M.R.S. § 4002(1–B)(A)(1) (2012), and ordered the Department to cease reunification efforts with the mother on that basis. *See* 22 M.R.S. § 4041(2)(A–2)(1) (2012). The mother appeals. *See* 22 M.R.S. § 4006 (2012).

## II. DISCUSSION

[¶ 9] The Child and Family Services and Child Protection Act, 22 M.R.S. §§ 4001 to 4099–H (2012), imposes on the Department a multitude of rehabilitation and reunification obligations with the goal

of returning children in Department custody to their parents while still "protecting the welfare of children." 22 M.R.S. §§ 4003(3), 4041; *see In re Doris G.*, 2006 ME 142, ¶ 9, 912 A.2d 572. In some limited circumstances, however, the court may relieve the Department of those efforts by issuing a cease reunification order. 22 M.R.S. § 4041(2)(A–2). These circumstances exist when a court determines that either an "aggravating factor" exists or reunification efforts are inconsistent with the permanency plan for the child. 22 M.R.S. § 4041(2)(A–2). An "aggravating factor" exists when, inter alia, "[t]he parent has subjected any child for whom the parent was responsible to aggravated circumstances, including, but not limited to, ... aggravated assault ... or any other treatment that is heinous or abhorrent to society." 22 M.R.S. § 4002(1–B)(A)(1).

[¶ 10] Here, the mother does not challenge the court's findings of fact regarding its jeopardy determination, and, more particularly, "concedes that the factual conclusions relevant to the finding of an aggravating factor are supportable by the record." She argues, however, that the court erred in issuing the cease reunification order on the basis of those findings.

[¶ 11] We review the court's factual findings for clear error, and will disturb those findings only if there is no competent record evidence that "can rationally be understood to establish as more likely than not that the child was in circumstances of jeopardy to his health and welfare." *Destiny T.*, 2009 ME 26, ¶ 14, 965 A.2d 872. The record establishes that the mother subjected the child to an assault by her boyfriend, and that such conduct is abhorrent to society. The court specifically found that the mother understood and agreed, well before the incident

in question, that her boyfriend should not care for the child and that, although the mother did call 911 for the baby, she failed to provide information to the emergency responders that might have aided in their care of the child. Most importantly, the court also found that the mother continues to minimize the seriousness of the incident and her child's long-term injury. This "disconnect with reality," the court found, "will place [the child] in jeopardy if [he is] returned home." The court also found compelling the mother's voluntary termination of her parental rights to an older child just two years earlier, based on her acknowledgment that she could not provide the extensive medical care that the child needed. B.C., too, will require extensive long-term medical care. We agree with the parties that this record includes ample evidence to support the court's finding of jeopardy, as well as its finding of the presence of an aggravating factor.

[¶ 12] Beyond these findings in the jeopardy order, however, we do not consider the court's entry of the cease reunification order. Title 22 M.R.S. § 4006 states: "A party aggrieved by an order of a court entered pursuant to section 4035, 4054 or 4071 may appeal directly to the Supreme Judicial Court sitting as the Law Court," but "[o]rders entered under this chapter under sections other than 4035, 4054 or 4071 are interlocutory and are not appealable." Although the determination, at the time of the jeopardy proceeding, that aggravating factors exist is appealable because it comprises a portion of the jeopardy finding, the disposition ordered by a court after it makes that finding is not appealable. A cease reunification order, issued pursuant to 22 M.R.S. § 4041(2)(A–2), therefore is not subject to appellate review.[1]

1. A court's finding of an aggravating factor pursuant to 22 M.R.S. § 4041(2)(A–2) (2012)

[¶ 13]   We held as much in *In re Johnna M.*, for example, in which a father appealed and the Department cross-appealed from a jeopardy order. 2006 ME 46, ¶¶ 1–2, 903 A.2d 331.   The father argued that there was insufficient evidence to support the cease reunification order as to one of his children, and the Department argued that the court erred in failing to cease reunification as to a second child. *Id.* We considered the sufficiency of the evidence supporting the factual findings in the father's appeal, but declined to consider the Department's contention because "the Department acknowledge[d] that what it really [sought] to appeal [was] the court's failure to issue a cease reunification order." *Id.* ¶¶ 4–8.

[¶ 14]   Similarly, in *In re Matthew W.*, a set of parents appealed from the entry of a jeopardy order that included the finding of an aggravating factor and a provision relieving the Department of its reunification obligations.   2006 ME 67, ¶ 1, 903 A.2d 333.   In the appeal, the father argued that the court exceeded its discretion in ordering a cease reunification. *Id.* ¶ 14.   We held that a cease reunification order "is an interlocutory order rather than a final judgment, and, therefore, is not now appealable."[2] *Id.* ¶ 15.

[¶ 15]   Thus, we have considered the mother's contention regarding the cease reunification order only to the extent that she challenges the sufficiency of the evidence supporting the finding of an aggravating factor.   Because the court's finding of the existence of an aggravating factor is amply supported by the record, we do not disturb the judgment.

[¶ 16]   We also decline to consider the mother's additional contention—that the court violated her right of procedural due process by excluding certain evidence at the hearing.   The mother does not identify what evidence she attempted to introduce that the court improperly excluded, refers only to the court's exclusion of "a witness and . . . evidence through that witness relative to disposition," offers no citation to a specific authority she believes the court violated, and does not indicate how she was prejudiced by the exclusion of the evidence at issue. *See In re David H.*, 2009 ME 131, ¶ 31 n. 6, 985 A.2d 490 (holding that an issue raised without any effort to provide developed argumentation is not preserved for appellate review).

The entry is:

Judgment affirmed.

---

does not require the court to issue a cease reunification order.   Pursuant to 22 M.R.S. § 4036(1)(G–2) (2012), that determination is left to the court's discretion and is not appealable, *see* 22 M.R.S. § 4006 (2012).

2.   Our decisions in *In re Jamara R.*, 2005 ME 45, 870 A.2d 112, and *In re Ashley S.*, 2000 ME 212, 762 A.2d 941, in which we appeared to consider the merits of a cease reunification order, are consistent with our decision today. In *Jamara R.*, we considered the factual finding of the existence of an aggravating factor, and concluded that the court's finding of heinous and abhorrent treatment was supported by sufficient record evidence.   2005 ME 45, ¶¶ 15–16, 870 A.2d 112.   In *Ashley S.*, too, we interpreted the "aggravating factor" language in the statute, and held that the court's finding of such an aggravating factor was supported by the evidence.   2000 ME 212, ¶¶ 14–22, 762 A.2d 941.   To the extent *Jamara R.* and *Ashley S.* suggest that we will undertake a review of a cease reunification order other than to consider the factual sufficiency of the underlying findings, however, those decisions are overruled.   In addition, to the extent that *In re Matthew W.*, 2006 ME 67, 903 A.2d 333, suggests that we will not consider the factual sufficiency of an aggravating factor finding, that, too, is overruled.