MAINE SUPREME JUDICIAL COURT                                 Reporter of Decisions
Decision:      2017 ME 208
Docket:        Cum-17-143
Submitted
  On Briefs:   September 27, 2017
Decided:       October 24, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

IN RE ALIYAH A. et al.

SAUFLEY, C.J.

[¶1]  The question presented in this appeal is whether the court erred in finding an aggravating factor as to the father of Aliyah A. and her five younger siblings based on conduct that is "heinous or abhorrent to society," 22 M.R.S. § 4002(1-B)(A)(1) (2016), when the father left the children living with their mother in squalid conditions without adequate food or heat.  The father appeals from the finding of an aggravating factor as part of a jeopardy order entered by the District Court (Portland, *Powers, J.*) after a contested hearing. We discern no error in the court's finding of an aggravating factor, and we affirm the judgment.

[¶2]  Based on competent evidence in the record, the court found, by a preponderance of the evidence, that the six children in this matter were in circumstances of jeopardy to their health or welfare if placed in either

2

parent's care.[1]  *See* 22 M.R.S. § 4035(2) (2016).  The court found the existence of an aggravating factor as to the father for his treatment of the children in a manner that was "heinous or abhorrent to society" because he left the six children in the mother's care for weeks, without providing support or checking on them, when he knew that the conditions in the home were unsanitary and unsafe.  *Id.* § 4002(1-B)(A)(1).  Accordingly, the court entered an order authorizing the Department of Health and Human Services to cease reunification efforts with the father.  *See* 22 M.R.S. §§ 4036(1)(G-2), 4041(2)(A-2)(1) (2016).[2]

[¶3]  The court based its determinations on detailed findings of fact, including the following:

> The three oldest children were in DHHS custody in 2011 due to neglect and returned to the parents with a dismissal of the case in 2013.  Jeopardy in that case in 2011 was "significant neglect based on unsafe and unhealthy living conditions, exposure to unsafe people, and the developmental delays of Aliyah and [the next oldest child]."  [The guardian ad litem in this case] was also involved in the 2011 case.

---

[1]  The mother has not brought an appeal, and we do not discuss the court's decision with respect to her further.

[2]  "Although the determination, at the time of the jeopardy proceeding, that aggravating factors exist is appealable because it comprises a portion of the jeopardy finding, the disposition ordered by a court after it makes that finding is not appealable."  *In re B.C.*, 2012 ME 140, ¶ 12, 58 A.3d 1118; *see* 22 M.R.S. § 4006 (2016).

On December 2, 2016 [the mother] was at home, arrested, and jailed for violating bail conditions. [The father] was not around. He later said he had left them 5 months ago. DHHS entered the home and found it to be in a "deplorable" condition. There were feces on walls, cat urine on the floor, and garbage piled high. The house smelled of feces and urine and trash was everywhere. [The two youngest children] were purple, swollen, and cold . . . . [One of them] was face down on a mattress in a soiled diaper and had no pants or socks on. The four children at home were taken for evaluation to Maine Medical Center. The two youngest had frostbite and stayed a few days there. The other two were medically fine. Portland Water District had shut off water to the home several weeks before December 2. The home itself was cold, certainly under 60 degrees. There were some broken windows in the home. The Portland Police Department civilian coordinator who also went to the home on December 2, and described its condition as "disgusting, filthy, and cluttered." She said it was the worst building she had entered during her 15 years of employment. She noted [that one of the younger children] picked up crumbs . . . and tried to eat them. [The mother] said the children were not hungry. The children needed socks and shoes. The oldest two also came to the hospital from school later that day.

The Portland code enforcement officer had gone to this home in January 2015 and the family vacated for 5 days to clean up the home. He went again on December 2, 2016. . . . He saw the cluttered home, which had a space heater inside with broken windows to the outside. Shards of glass were within reach of the children. It was very dark and cold inside. He said the home was unsafe due to life safety issues, including no functioning smoke detector. He described the home as being in the "top two" he has seen in terms of its bad condition. The building has not been inhabited since then and remains boarded up with no water or power. The water had been shut off for at least a week before December 2, 2016. . . .

4

These parents have been in a relationship for about 10 years. Their relationship developed problems earlier in 2016, and [the father] would be gone, probably out of state, for days at a time. He says he has not been staying in the Portland home since September 6, 2016. He has a new girlfriend, with whom he has been staying since October 2016. The mother says he left the home on October 27, 2016. He has not been a primary caregiver and has had some recent one hour supervised visits with children. [The father] claims to want to reunify. He signed an updated reunification plan at a team meeting on January 24, 2017. He says the children were all in good health, that the home was not a mess, and that he was unaware of the youngest children's developmental delays when he left on September 6, 2016. Those comments are not likely accurate based on other evidence in this case.

. . . . Neither parent accepts any responsibility for the serious, long-term neglect and its impact on all the children. . . .

. . . .

The GAL concludes that the children are in jeopardy and have suffered from long-term neglect, which has been most obvious in the four youngest children. The two youngest showed signs of malnutrition as well. He notes all six have some level of special needs and have not received regular medical and other services to meet their individual needs. The needs are likely related to their long-term neglect. The parents have taken no responsibility for their role. The GAL [indicated] "this lack of understanding is dangerous and unlikely to change without an extreme shift in thinking by each parent." The children's recent situation is worse than it was four years ago. He concludes that it is unlikely either parent can ever care for the children and meet their needs. All the children are doing better in foster care even though all have issues.

. . . .

These same parents had issues involving their serious neglect of the three oldest children in 2011. They regained custody in 2013 with the case being dismissed. In December 2016 all six children, ranging from 9 months to 9 years old, were found living in a cold, unsanitary, and unsafe home. The mother felt there was essentially nothing wrong with the situation. The father has been in and out of the home since the summer of 2016 and totally out of the home since either September 6, 2016 or October 27, 2016. He has given no financial support since he left at least. He also says the children were fine when he last saw them in the fall of 2016, which cannot be accurate.

The photos and testimony demonstrate that the family home owned since 2011 was in disgusting condition and not suitable for raising these children. . . . That condition was clearly in existence for some time, not just on December 2, 2016. Home cleanliness issues were also present in this family's 2011 child protection case. There had been no water in the home for several days or weeks. The temperature was cold enough to cause frostbite. At least two of the children did not appear well. The parents did not take the children regularly to medical and dental visits. They did not recognize the numerous developmental delays which are ongoing and in need of serious services. The father and mother were oblivious to these serious issues and were not getting services to those children. The father gave no support and moved in with his new girlfriend in October 2016, not spending any real time with the children before this case began. . . . He should have been present at least enough to check on his children even if he had left the home. His responsibility for the horrible neglect is as clear to the court as the mother's, who was present daily in the home. No child should live under the squalid conditions shown above, and no parent should allow such conditions to exist.

. . . .

This case presents one of the worst factual backgrounds this court has ever seen regarding long-term poor parenting,

deplorable living conditions, and significant negative impacts on the children. These parents have shown that they cannot recognize their liabilities and the impact on their children. They are not likely to be rehabilitated by participating in services, nor are they likely to be able to meet their children's needs, protect them, and reunify with any of them. There is no sense under these facts to spend additional time, energy, and money on reunification that has almost no chance of success.

[¶4] The father does not contest the finding of jeopardy, which is supported by the court's findings and the evidence presented at the jeopardy hearing. *See id.* § 4035(2). He contests only the finding of an aggravating factor, arguing that his conduct was not "heinous or abhorrent to society" because he was not the person responsible for the conditions in the mother's home and that there is no evidence showing that he was aware the water had been shut off. *Id.* § 4002(1-B)(A)(1).

[¶5] The court's findings of jeopardy and an aggravating factor are supported by competent evidence in the record. *See In re B.C.*, 2012 ME 140, ¶ 11, 58 A.3d 1118. The evidence supports the court's findings that the father knew about the unsafe and unsanitary conditions in the mother's home, but that he nonetheless entrusted the mother with the children's primary, and at times exclusive, care over a course of weeks, months, and years—even after previous involvement by the Department—without acting to support the children or protect them from harm. *See id.* ¶¶ 4, 11, 58 A.3d 1118 (affirming

finding of conduct heinous or abhorrent to society when a parent left the child with a significant other she knew to be incapable of handling the infant, resulting in a life-threatening injury to the child); *In re Jamara R.*, 2005 ME 45, ¶¶ 4, 15-16, 870 A.2d 112 (affirming finding of conduct heinous or abhorrent to society when the mother left the child in the care of her boyfriend, who had been convicted of assaulting a child before, and the seventeen-month-old child suffered a spiral fracture, facial bruises, a bite mark, and scratches), *overruled in part on other grounds by In re B.C.*, 2012 ME 140, ¶ 14 n.2, 58 A.3d 1118.

[¶6] As the court found, the father's "responsibility for the horrible neglect is as clear . . . as the mother's, who was present daily in the home." The court did not err in finding an aggravating factor based on the father's extraordinary neglect of the children, which ultimately resulted in long-term deprivation of medical and dental care, failure to thrive, frostbite, malnutrition, significant and possibly irreversible developmental delays, and long-term special needs for the children. *See In re Ashley S.*, 2000 ME 212, ¶¶ 4-10, 16-22, 762 A.2d 941 (affirming finding of conduct heinous or abhorrent to society when the child was subjected to "extraordinary neglect" in a squalid apartment where she was ignored, unfed, and unwashed, and was found covered in feces), *overruled in part on other grounds by In re B.C.*, 2012

ME 140, ¶ 14 n.2, 58 A.3d 1118; *see also In re B.C.*, 2012 ME 140, ¶¶ 4, 11, 58

A.3d 1118; *In re Jamara R.*, 2005 ME 45, ¶¶ 4, 15-16, 870 A.2d 112.

The entry is:

Judgment affirmed.

---

Amy McNally, Esq., Woodman Edmands Danylik Austin Smith & Jacques, P.A., Biddeford, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2016-101
FOR CLERK REFERENCE ONLY