MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:        2014 ME 87
Docket:          Yor-13-409
Submitted
 On Briefs:      April 29, 2014
Decided:         July 1, 2014

Panel:           SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

## IN RE E.L. et al.

MEAD, J.

[¶1]  The father of E.L. and A.L. appeals from the judgment of the District Court (Biddeford, *Douglas, J.*) finding that he has placed both children in circumstances of jeopardy and finding the existence of an aggravating factor as defined by 22 M.R.S. § 4002(1-B)(A)(1) (2013).  The father contends that both findings are erroneous.  Specifically, he argues that the court erred when it considered evidence of his past actions as the basis for its jeopardy finding, and when it considered evidence of his abuse of the mother in finding the existence of an aggravating factor.  Because we conclude that the trial court is required to take into account whether there is a prospective threat of jeopardy, and that evidence of extreme psychological abuse and the resulting oppressive home environment is sufficient to find the existence of an aggravating factor, we affirm the judgment.

## I. BACKGROUND

[¶2]  The court included the following findings in its jeopardy order, all of which are fully supported by the record.  *See In re B.C.*, 2012 ME 140, ¶ 2, 58 A.3d 1118.  The mother and father and their two children, E.L. and A.L., have always lived a very isolated lifestyle, in part because of their religious beliefs, but mainly because of the father's controlling behavior and the oppressive home environment that he created.  Until the mother and two children moved out of the family home, they resided in a small, unfinished house in a rural setting.  The mother and children rarely left the home unaccompanied by the father, and visitors were not allowed in the house if he was not present.  Both children were born in the home and were homeschooled.  The family all slept in the same bed.

[¶3]  This way of life began as a religious choice for the mother and father. They shared a particular faith with an established set of principles based on interpretations of biblical teachings, including the principle that required the mother to be unquestioningly submissive to the father and do as she was told.  The father was entitled to be the sole decision-maker and "protector" of the family.

[¶4]  Over time, the father became more and more controlling.  To comply with her husband's orders, the mother wore men's clothing to avoid attracting attention, avoided even innocent social interactions, and gradually cut herself off from her own family.  Although they lived in a remote area, she was not permitted

to use the family car. The father would routinely check the driveway for unfamiliar tire tracks to ensure that no one had visited the home in his absence.

[¶5] After the couple had their first child, the father's overbearing and controlling treatment of the mother became particularly abusive. He would frequently demean and berate the mother, often in front of the children. His actions included referring to her appearance in cruel and derogatory terms, often relating to body weight. He would check with the children to ensure that she had exercised while he was at work. In addition to his demeaning comments about her appearance, the father would routinely threaten to physically harm the mother, including threats to drag her behind the bumper of his truck or to use a cattle prod on her.

[¶6] This behavior occurred daily, and the father used her as an example of what he considered bad behavior to threaten and scare the children. He called the mother an "unfit and horrible mother" and "a disgrace to all wives, mothers, and daughters." He made statements to the children such as "[g]o ahead, be like mama. Choose sin" and "every time you disobey me, you're letting the devil in and doing the devil's work instead of God's."

[¶7] In keeping with the family's principle of isolation, the homeschooled children were, just like the mother, prohibited from having contact with anyone outside the immediate family except for cousins on the father's side of the family.

4

The children had no play dates and were not allowed to interact with the children who lived next door.

[¶8]   When he turned his attention directly to the children, the father frequently disciplined them with excessive corporal punishment and, on one occasion, slapped one of the children across her face while she was sleeping because she was grinding her teeth.  The father used his anger and their fear to control the household, even "disciplining" the family dog by striking it with a metal ruler in front of the children.  In addition, the father handled firearms recklessly and irresponsibly, leaving a loaded weapon in a fruit bowl on the kitchen table or hanging it on a mirror.

[¶9]   Although she was six years old at the time she was removed from her father's care, the record suggests that E.L. had seen a pediatrician only twice and a dentist once, and A.L., who is two years younger, had never seen a pediatrician or a dentist.  The father was opposed to having the children receive medical treatment and decided that, when E.L. developed a cavity, he would provide the dental treatment himself.  In preparation, he purchased a dental drill.  The mother protested, but the father insisted that he would drill their daughter's tooth, and that no one could stop him.  This episode was the catalyst that spurred the mother to leave the father.

[¶10]   In early 2013, after the father expressed his intent to perform dental work on his daughters, the mother made plans to leave the home with her children and obtain a protection from abuse order against the father.  On March 6, 2013, while the father was at work, the State Police removed the mother and the children from the home at the mother's request.  That April, the Department of Health and Human Services filed a petition for a child protection order, and in July the court held a jeopardy hearing.  The court found that the father had subjected the children to circumstances of jeopardy.  *See* 22 M.R.S. § 4002(6).  The court also found the existence of an aggravating factor as defined by 22 M.R.S. § 4002(1-B)(A)(1), and issued an order relieving DHHS of its responsibility to attempt reunification.  The father appealed.

## II.  DISCUSSION

[¶11]   The trial court's jeopardy and aggravating factor findings were predicated principally on evidence of the father's psychological abuse.[1]  The father concedes that the evidence of psychological abuse in this case is, on its own, sufficient to support the jeopardy finding.  He contends, however, that the statutory definition of jeopardy, 22 M.R.S. § 4002(6), permits the court to consider only

---

[1]   Although the mother did not claim that the father physically abused the children, she testified that he did administer spankings that were "too hard" and frequent in her opinion, and on one occasion he slapped E.L. in her sleep to stop her from grinding her teeth.  If the mother tried to intervene because she felt the spankings were going too far, the situation would escalate.  On one occasion, the mother and E.L retreated into the bathroom and ended up cornered with the father screaming at them.

whether a parent poses a threat of jeopardy at the time of the respective hearing. Because he is incarcerated, he argues that he cannot present a current threat and that the court erred when it considered evidence of his past acts. He also argues that the evidence did not show that the children were sufficiently affected by the abuse for the court to find the existence of an aggravating factor as defined by 22 M.R.S. § 4002(1-B)(A)(1).

A.    The Jeopardy Finding

[¶12]  A finding that children are in circumstances of jeopardy to their health and welfare must be supported by a preponderance of the evidence. 22 M.R.S. § 4035(2) (2013). Jeopardy means "serious abuse or neglect as evidenced by . . . [s]erious harm or the threat of serious harm." 22 M.R.S. § 4002(6), (6)(A). In addition to physical abuse, serious harm is defined as "serious mental or emotional injury or impairment which now or in the future is likely to be evidenced by serious mental, behavioral, or personality disorder . . . ." *Id.* § 4002(10)(B) (2013). We review the trial court's factual findings for clear error, and "will disturb those findings only if there is no competent record evidence that can rationally be understood to establish as more likely than not that the child was in circumstances of jeopardy to his health and welfare." *In re B.C.*, 2012 ME 140, ¶ 11, 58 A.3d 1118 (quotation marks omitted).

[¶13]  The evidence presented establishes that the father's behavior directly and indirectly resulted in severe emotional trauma to both children and created an environment in the family home that caused them emotional harm.  The father does not challenge the court's findings that his actions caused the children "psychological and emotional abuse arising out of the nature and dynamics of the family environment that he controlled and manipulated," or that he "subjected [the children] to angry, abusive behaviors on a regular basis for years."  Instead, relying on *In re Tabitha R.*, 2003 ME 76, 827 A.2d 830, he argues that 22 M.R.S. § 4035 requires that a threat of jeopardy exist *at the time* of the hearing.

[¶14]  Evidence of historical behavior is relevant to a finding of jeopardy under section 4035.  *See In re Rachel J.*, 2002 ME 148, ¶ 19, 804 A.2d 418 ("The nature of the proof required in the child protective context is different than in the criminal context; the court is assessing a risk, not determining whether the father committed a criminal act."); *In re Kafia M.*, 1999 ME 195, ¶ 12, 742 A.2d 919 ("While our inquiry as to ability to protect from jeopardy is prospective, the evidence we consider is retrospective.").  Accordingly, *Tabitha R.* does not, as the father argues, require that a trial court determine whether a parent poses a threat at the time of a jeopardy hearing; rather, in that case, we held that the court must consider "whether there is *prospective* jeopardy."  1999 ME 195, ¶ 12, 827 A.2d 830.  And in making that determination, we expressly stated that the trial

8

court must consider what has happened in the past. *See id.* ¶ 7 ("Evidence of past jeopardy is relevant to the future . . . ."). In child protection proceedings, what is past is often prologue regarding the threat of serious harm posed by the parent, and here, the court appropriately considered the father's past actions when it found that the children had been placed in circumstances of jeopardy.

## B.    The Aggravating Factor

[¶15]   In most child protection cases, DHHS is required to undertake a "multitude of rehabilitation and reunification obligations with the goal of returning children in [DHHS] custody to their parents." *In re B.C.*, 2012 ME 140, ¶ 9, 58 A.3d 1118 (quotation marks omitted). If a court determines that an aggravating factor exists, however, it may relieve DHHS of its reunification responsibilities. *Id.*; 22 M.R.S. 4041(2)(A-2) (2013). The existence of an aggravating factor may be found when a parent who is responsible for a child subjects the child to "aggravating circumstances, including, but not limited to . . . chronic abuse or any other treatment that is heinous or abhorrent to society."    22 M.R.S. § 4002(1-B)(A), (A)(1). The finding of an aggravating factor is reviewed for clear error. *In re B.C.*, 2012 ME 140, ¶ 11, 58 A.3d 1118.

[¶16]  Here, the court's finding of an aggravating circumstance was based on its determination that the father's treatment of his children was "heinous or abhorrent to society." 22 M.R.S. § 4002(1-B)(A)(1). In explaining its conclusion,

the court referred to the effect on the children of the father's continued psychological abuse of their mother, the father's direct abuse of the children, and the father's attempt to "undermine and damage the children's relationship with their mother." The father argues that the evidence presented is insufficient to support the finding of an aggravating factor. We disagree.

[¶17] The court found that the children in this case were exposed to an "environment of extreme psychological and emotional abuse" involving their mother over a period of years. It stated:

> [T]he testimony and evidence in this case depicted a family that was isolated, intimidated and abused by a father over a period of years. [The father's] treatment of his wife was degrading, cruel and abusive, and amounted to a systemic effort to subvert her positive self-image, confidence and sense of worth as a woman and a mother. He deliberately exposed his daughters to these behaviors. He attempted to undermine and damage the children's relationship with their mother. He subjected his daughters to excessive physical discipline and other behaviors that could have [led] to serious physical or emotional injury, including reckless exposure to a loaded firearm. He forcefully assaulted one of his daughters while she was sleeping. He intended to practice dentistry on his daughter without any qualifications to do so.

[¶18] The record supports the court's determination that the father's abuse was chronic, heinous and abhorrent to society.

The entry is:

Judgment affirmed.

**On the briefs:**

Virginia Lee Holt, Esq., Scarborough, for appellant father

Janet T. Mills, Attorney General, and Nora Sosnoff, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Biddeford District Court docket number PC-2013-22
FOR CLERK REFERENCE ONLY