MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:       2015 ME 37
Docket:         And-14-251
Submitted
 On Briefs:    February 26, 2015
Decided:       March 24, 2015

Panel:          SAUFLEY, C.J., and ALEXANDER, MEAD, and JABAR, JJ.

IN RE E.A. et al.

MEAD, J.

[¶1]  The mother and father of E.A. and E.A. appeal from a judgment of the District Court (Lewiston, *Beliveau, J.*) finding jeopardy and the existence of aggravating factors pursuant to 22 M.R.S. §§ 4002(1-B)(B)(3), 4002(1-B)(B)(5), 4002(1-B)(A)(1), and 4035 (2014).  We conclude that the court did not err when it found aggravating factors as to the father or admitted in evidence an autopsy report of the parents' son.  Because the evidence supports the court's findings, we affirm the judgment.

I.  BACKGROUND

[¶2]  The following facts are supported by competent record evidence. *See In re M.E.*, 2014 ME 98, ¶ 16, 97 A.3d 1082.  On October 3, 2013, premature twins E.A. and E.A. were born at Maine Medical Center in Portland.  Six days later, the Department of Health and Human Services (Department) petitioned for a child protection order, alleging that the twins were in circumstances of immediate

risk of serious harm based on the mother's infliction of fatal injuries to the parents' adopted son in February 2003, and the father's infliction of serious bruising to the son two days before his death. The court granted the petition. After spending several weeks in Maine Medical Center's neonatal intensive care unit, the twins were discharged into a foster home. In an early December 2013 visit with their pediatrician, the mother and father declined to give consent for vaccinations for the twins. In January 2014, the twins received only two of the five recommended vaccines. On February 25, 2014, the court ordered that the twins be administered any and all vaccinations recommended by the pediatrician. The twins are currently healthy.

[¶3] On May 30, 2014, the court concluded that E.A. and E.A. would be in circumstances of jeopardy to their health and welfare if returned to the custody of their parents. The court found that the parents have failed to acknowledge responsibility for the injury and death of their adopted son.

[¶4] The sequence of events that started in 2003, and which loomed large in the court's consideration, are as follows: On February 13, 2003, when the son was less than two years old, the father beat him at least three times with a wooden spoon on his buttocks, leaving substantial bruises. The next night, the mother called 9-1-1 because the son had stopped breathing. She told the police that he had fallen several times during the day and hit his head on the bathtub and the floor.

The son died on February 15, 2003, after suffering retinal hemorrhages, optic nerve sheath hemorrhage, subarachnoid hemorrhage, cerebral edema, hemorrhage in muscle and soft tissue surrounding the upper cervical vertebrae, and a subdural hematoma. The Chief Medical Examiner determined that cranio-cervical trauma was the cause of death, and ruled the son's death a homicide.

[¶5] The mother was indicted for manslaughter in the son's death. In her 2005 jury trial, Dr. Lawrence Ricci testified for the State and concluded that the son's injuries were not consistent with the mother's statement of the events. Dr. Ricci opined that the son's injuries were consistent with violent shaking and that the extent of his injuries could not be produced by a fall or a group of minor falls. The mother was convicted and sentenced to eight years' imprisonment, with all but forty-two months suspended. In a separate jury trial, the father was convicted of assault (Class C) for hitting the son with a wooden spoon and causing severe bruising. He was sentenced to eighteen months' imprisonment, with all but six months suspended. We affirmed both convictions. *State v. Allen*, 2006 ME 20, ¶ 1, 892 A.2d 447; *State v. Allen*, 2006 ME 21, ¶ 1, 892 A.2d 456.

[¶6] In its jeopardy order, the court concluded that the father's inability to grasp the severity of the violence to which the son had been subjected, based primarily on the parents' continued belief that his death was caused by an undiagnosed seizure disorder brought on by a vaccination, "present[s] a threat of

4

serious harm or serious injury to [the twins]." The court also found that the father "has not admitted to any wrongdoing" in the spanking that left severe bruising on the son two days before his death. It determined that the father's "recent actions, including refusing to vaccinate his highly susceptible premature infants, show utter disregard for the health and welfare of [the twins]." The court similarly concluded that the mother is unable to show remorse for her actions, has not admitted to wrongdoing, and still maintains that the son died of an undiagnosed medical condition. After finding aggravating factors as to both the mother and father, the court relieved the Department of its obligation to provide the parents with reunification services. It ordered the twins to remain in foster care and established a permanency plan of adoption. Both parents timely appealed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

[¶7] The parents argue that the evidence was insufficient to support the court's findings and assert that their failure to take responsibility for the death of their son does not establish jeopardy. Jeopardy is defined as "serious abuse or neglect, as evidenced by . . . [s]erious harm or threat of serious harm" or "[d]eprivation of necessary health care when the deprivation places the child in danger of serious harm." 22 M.R.S. § 4002(6)(A) and (B-1) (2014); *see In re M.E.*, 2014 ME 98, ¶ 17, 97 A.3d 1082. We review a court's factual findings,

which "must be supported by a preponderance of the evidence," for clear error. *In re M.E.*, 2014 ME 98, ¶¶ 16-17, 97 A.3d 1082. "[T]hose findings will be upheld unless there is no competent record evidence that can rationally be understood to establish as more likely than not that the child was in circumstances of jeopardy to his health and welfare." *Id.* ¶ 16 (quotation marks omitted).

[¶8] We conclude that there is more than sufficient evidence in the record to support the court's findings establishing jeopardy as to both parents. Contrary to the parents' contentions, the evidence supports the court's findings that (1) the son died as a result of inflicted "severe violent shaking," not an undiagnosed seizure disorder, and (2) the parents have not acknowledged wrongdoing regarding his death or the bruising inflicted by the father's spanking. The mother contests the sufficiency of the evidence supporting the court's jeopardy finding by relying on testimony of defense witnesses at her manslaughter trial and discounting the State's witnesses, including Dr. Ricci, who concluded that the injuries "certainly were consistent with inflicted trauma more than accidental trauma." Although the mother admitted to treating the son "roughly" the day of his death, believed that she should have secured medical attention sooner, and grieved after he died, she has never admitted that he died as a result of inflicted trauma. Although the father acknowledges that he hit the son with a wooden spoon and has promised not to use corporal punishment in the future, he also testified that hitting the son "was the

wrong thing to do because it didn't work." The father maintains that he was convicted of assault only because the son died and the jury saw a prejudicial photo of his injuries.

[¶9] The court properly considered the parents' past conduct and whether they have sufficiently accepted responsibility for their actions. "In child protection proceedings, what is past is often prologue regarding the threat of serious harm posed by the parent . . . ." *In re E.L.*, 2014 ME 87, ¶ 14, 96 A.3d 691. "Evidence of historical behavior is relevant to a finding of jeopardy . . . . [T]he court must consider whether there is *prospective* jeopardy. And in making that determination, . . . the trial court must consider what has happened in the past." *Id.* (citation and quotation marks omitted); *see also In re Kafia M.,* 1999 ME 195, ¶ 12, 742 A.2d 919 ("While our inquiry as to ability to protect from jeopardy is prospective, the evidence we consider is retrospective."). As Dr. Ricci testified, "the fact that there was a pattern of abusive physical discipline to [the son] . . . is relevant to future intervention [and] prediction." The parents continue to demonstrate a profound lack of insight regarding the cause of their son's death. The court did not err given that, notwithstanding unequivocal testimony to the contrary, both parents maintain that the son's death was caused by an undiagnosed

seizure condition brought on by a reaction to a vaccination that mimicked shaken-baby syndrome.[1]

B.    Aggravating Factors

[¶10]  The court determined that the father's assault conviction constituted an aggravating factor pursuant to 22 M.R.S. § 4002(1-B)(B)(5), which provides that an aggravating factor exists if a parent has been convicted of "[f]elony assault that results in serious bodily injury" against "a child for whom the parent was responsible."   The father argues that his conviction pursuant to 17-A M.R.S. § 207(1)(B) (2014) was for bodily injury—not "*serious* bodily injury" as provided in section 4002(1-B)(B)(5).  (Emphasis added.)  *See* 17-A M.R.S. § 207(1)(B) ("A person is guilty of assault if . . . [he] intentionally, knowingly or recklessly causes bodily injury to another person who is less than 6 years of age.").  "We review de novo the court's interpretation of [a] statute for errors of law, and review the court's application of . . . statutory language to the facts at issue for abuse of discretion." *In re Ashley S.*, 2000 ME 212, ¶ 11, 762 A.2d 941, *overruled on other grounds by In re B.C.*, 2012 ME 140, ¶ 14 n.2, 58 A.3d 1118.

---

[1]  The parents' initial refusal to vaccinate the twins further confirms their current lack of insight.  The pediatrician testified that vaccinations were particularly important for premature babies and that the parents declined to give consent for the vaccines at the two-month visit.  At the jeopardy hearing, the father testified that he believed that a hepatitis B immunization had caused the son "to stop developing and growing."  That the parents ultimately consented to the vaccines does not render the court's finding clearly erroneous.

[¶11]  There was no error here.  First, in addition to its finding pursuant to section 4002(1-B)(B)(5), the court also found that the father's conduct constituted an aggravating factor pursuant to 22 M.R.S. § 4002 (1-B)(A)(1), which includes "any . . . treatment that is heinous or abhorrent to society."  The court properly concluded that bruising a child with a wooden spoon is "treatment that is heinous or abhorrent to society," and therefore did not err in finding an aggravating factor on that basis alone.  Further, based on the evidence and photographs presented, the court did not abuse its discretion in applying section 4002(1-B)(B)(5) to the facts here and concluding that the father committed an assault resulting in serious bodily injury to the son.

C.     Documents of the Chief Medical Examiner

[¶12]   Finally, the mother argues that documents produced during the criminal investigation into the son's death—the investigative report, the autopsy, and the neuropathology report—were hearsay and that admitting them in evidence violated her substantive due process rights because she was unable to cross-examine their author.  "A trial court's decision to admit or exclude alleged hearsay evidence is reviewed for an abuse of discretion," *Walton v. Ireland*, 2014 ME 130, ¶ 12, 104 A.3d 883 (quotation marks omitted), but we review de novo the application of the Confrontation Clause, *State v. Johnson*, 2014 ME 83, ¶ 8, 95 A.3d 621.

[¶13]   The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also* Me. Const. art. I, § 6. This right does not extend to civil matters, however. *See, e.g.*, *Covell v. Dep't of Soc. Servs.*, 791 N.E.2d 877, 893 (Mass. 2003) ("There is no right of confrontation in civil proceedings.").

[¶14]  "The due process to which a parent in a child custody proceeding is entitled does not rise to the same level as that accorded the defendant in a criminal prosecution." *In re Jo-Nell C.*, 493 A.2d 1053, 1055 (Me. 1985). Child protection proceedings, although "deserving of more elaborate procedural safeguards than are required for the determination of lesser civil entitlements" due to the "constitutional dimension" of the right to parent, *id.*, are nonetheless civil matters. The Confrontation Clause therefore does not apply in child protection proceedings. *See, e.g.*, *In re Noah W.*, 813 A.2d 365, 371 (N.H. 2002) ("Because an action to terminate parental rights is a civil proceeding, the Sixth Amendment confers no right of confrontation on the respondent."); *In re A.L.*, 669 A.2d 1168, 1170 (Vt. 1995) ("[P]arents do not have a right to face-to-face confrontation in [child protection] proceedings.").[2] The court did not abuse its discretion in admitting the

---

[2]   *See also In re D.B.*, 947 A.2d 443, 449 n.11 (D.C. 2008); *In re L.K.S.*, 451 N.W.2d 819, 822 (Iowa 1990); *In re J.D.C.,* 159 P.3d 974, 981 (Kan. 2007); *In re S.A.,* 708 N.W.2d 673, 679 & n.8 (S.D. 2005) (citing cases).

documents, all of which were accompanied by a certificate of the Chief Medical Examiner. *See* 22 M.R.S. § 3022(6) (2014) ("Notwithstanding any other provision of law or rule of evidence, the certificate of the Chief Medical Examiner . . . shall be received in any court as prima facie evidence of any fact stated in the certificate or documents attached to the certificate.").

The entry is:

Judgment affirmed.

---

**On the briefs:**

Jamesa J. Drake, Esq., Drake Law, LLC, Auburn, for appellant father

Adam P. Sherman, Esq., Paradie, Sherman, Walker &Worden, Lewiston, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket number PC-2013-73
FOR CLERK REFERENCE ONLY