MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2020 ME 21
Docket:       Sag-19-272
Submitted
  On Briefs:  November 21, 2019
Decided:      January 30, 2020

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, and HUMPHREY, JJ.*

## IN RE CHILD OF RYAN F.

PER CURIAM

[¶1]  The mother and the father of a child each appeal from a judgment entered by the District Court (West Bath, *Dobson, J.*) finding that the child is in jeopardy pursuant to 22 M.R.S. § 4035 (2018).  Both parents contend that the evidence was insufficient to support the court's finding of jeopardy, arguing that jeopardy did not exist at the time of the hearing, and that they have participated in all services required of them.  The mother also contends that the court erred in applying the statutory presumption contained in to 22 M.R.S. § 4035(2-A), arguing that the court's application of the statute violated the parents' due process rights.  We affirm the judgment.

---

* Although Justice Hjelm participated in the appeal, he retired before this opinion was certified.

## I. BACKGROUND

[¶2]  The following facts are drawn from the court's findings, which are supported by competent evidence in the record, and from the procedural record. *See In re Child of Radience K.*, 2019 ME 73, ¶ 2, 208 A.3d 380.

[¶3]  The Department of Health and Human Services filed a petition for a child protection order for the child on December 14, 2018, one day after the child was born.[1]  The Department alleged that the child was in jeopardy due to the father's prior convictions for gross sexual assault and unlawful sexual contact involving two of his other children, the father's failure to complete sex offender treatment, and the mother's inability and unwillingness to acknowledge the threat posed by the father.

[¶4]  On that same day, the court entered an order of preliminary protection, placing the child in the Department's custody.  The parents later waived the opportunity for a summary preliminary hearing and the court entered an order maintaining custody of the child with the Department.  On February 7, 2019, in order to provide time for the father to complete a

---

[1]  At the time of the child's birth, the Department was already involved in a separate child protection proceeding with the mother and her other three children with a different father.  In that proceeding, a jeopardy order was entered by the District Court (Wiscasset, *Sparaco, D.C.J.*), in which the court determined that the children should remain in the custody of the Department and found that the mother's three children were in jeopardy based, in part, on the mother permitting her children to spend time with a convicted sex offender—the father in this appeal.

psychological evaluation, the parents filed a motion to excuse the 120-day requirement for the court to issue a jeopardy order, which the court (*Field, J.*) later granted.  *See* 22 M.R.S. § 4035(4-A).

[¶5]  The court (*Dobson, J.*) held a contested jeopardy hearing on May 31, 2019, at which, among others, the parents, the guardian ad litem, and the father's psychologist testified.  At the hearing, the court denied the father's motion for judgment as a matter of law.  *See* M.R. Civ. P. 50.  On June 12, 2019, the court entered a jeopardy order, finding by a preponderance of the evidence that the child was in jeopardy.  The court also determined that, because of the father's prior convictions for sexual offenses against minor children, the statutory rebuttable presumption in 22 M.R.S 4035(2-A) applied to the parents and that "the parents must rebut the presumption."  After, the father filed a motion for additional findings of fact, *see* M.R. Civ. P 52(b), which the court granted in part.

[¶6]  In support of its determination that the child was in jeopardy, the court made the following findings of fact, which are supported by competent evidence in the record.  With regard to the father, the court found:

> In this case the threat of serious harm asserted by the State with respect to [the father] is the threat that he poses due to his past sexual offense history and his substance abuse disorder, now in remission for 23 years, but which if it returned could contribute to

4

sexual offending as it has in the past. There was no testimony or evidence that [the father] has been drinking, and he has taken significant steps to keep his alcohol abuse in remission.

. . . .

[The father] presented the report and testimony of the agreed expert, [a psychologist]. Her report and her testimony supported her conclusion, based primarily on . . . [test] results that [the father] presented a very low risk of reoffending, 2.5%, at this time. This risk was reduced substantially from what existed at the time of his release (20.5%). . . . [The psychologist] also testified that [these tests] . . . should not be used to predict that any specific person will re-offend. She also noted that this does not mean there is no risk of re-offense. According to [the psychologist], there are no other sex offender risk assessments that are as widely used or equally valid to the ones . . . used. [The psychologist] also acknowledged that sex offenses are substantially under reported, thus it is possible, although there is no evidence, that [the father] has re-offended.

[¶7] Following the father's motion for further findings, the court found that the psychologist "testified that there is nothing [the father] can do to further reduce his risk of reoffense."

[¶8] In its jeopardy order, the court also found:

[The father] has associated with known sex offenders which is concerning and probation officers advise against it, [and] this would be especially important if the sex offenders were around young children. [The father] does have rules for himself to protect against the risk of re-offense. . . . It is of concern to the court . . . that there is some risk—although according to [the psychologist] no greater risk than someone convicted of even a non-sexual criminal offense—that he will re-offend. Additionally, there will be 4 young children . . . living in the household. [The father] has many protective factors including stable employment, a solid

relationship with [the mother], friends, ties to the community and long-term sobriety.

[The father] was required to participate in Sex Offender treatment during the 5 years of his probation. [The father's] son is a sex offender, lifetime registrant. [The father] works with his son but [the son] has no contact with the children. For a period of time two other sex offenders . . . resided on the [the parents'] property in a separate mobile home or trailer [until September 2018]. After [these two sex offenders left] the property, [one of these individuals and his son] returned to the residence [and] a conflict ensued.[2]

[¶9] With regard to the mother, the court found:

[A]t first, [the mother] was not fully aware of the extent of [the father's] sexual offense criminal history, but she certainly is now. It also appears that [the mother] did not initially appreciate the risk that his sex offense convictions presented to [the child]. [The mother] also has completed a 16 week non-offender program to help her to recognize the risk presented by a sex offender being around children and how to avoid or reduce that risk, including being wary of someone who favors one child or spends time solely or mostly with one child to the exclusion of others. She recognizes bathing and diaper changing and changing clothes as presenting a risk of re-offense. While she can articulate these very appropriate aids in identifying risk of re-offense, it is not apparent that she accepts that [the father] presents any risk and it is unclear how . . . she would be able to be present and awake at all times when she is with the children and never leave the children alone with him given the need to do routine errands, make medical appointments, etc on a 24/7 basis.

---

[2] Following the father's motion for further findings, the court found that this conflict involved the individual and his son being intoxicated at the property. Although the individual's son had previously lived on the parents' property in a camper, he was, at the time of the incident, living in a tent near the property. Additionally, when the parents returned home and discovered the individual and his son intoxicated, the police were called and the parents "cooperated . . . and gave written statements" to the police. No children were on the property at the time of the incident.

6

[The mother] has had ongoing weekly mental health counseling sessions, has completed substance abuse and parental capacity evaluations, (including a protective capacity component), medication and case management and clean random drug screens. The parental capacity evaluation was done May 17, 2019, but no report [w]as available at time of hearing. She and [the father] have perfect attendance at their weekly visits with [their child].

[¶10] In granting the father's motion for further findings of fact, the court found that the father "told [the mother] of his convictions, . . . made her aware of warnings signs, . . . and informed her that she should make him aware of any such conduct if she became aware of it." Despite these actions by the father, the court found that the mother was not "fully aware of [the father's] history and . . . not fully aware of the risks that history posed or whether [the father] had completed all sex offender treatment required of him."

[¶11] Additionally, the court found:

[The mother] and her three older children lived with [the father] for approximately one year before [the older children were] taken into DHHS custody, [and] at no time during or since [being placed in the Department's custody] did any of the children report any improper or problematic conduct by [the father]. Following their removal to DHHS custody, all three children were subjected to evaluations . . . which also disclosed no evidence of abuse.

[¶12] With regard to both parents, the court found:

The risk analysis presented by [the psychologist] apparently represents the best available measures of risk of re-offense and alone would present a fair prima facie case to rebut the

presumption of [j]eopardy provided by [22 M.R.S. § 4035(2-A)]. However, the court finds it has not been established that [the mother] has the necessary protective capacity (to be determined in part by the parental capacity evaluation) nor logistical capability needed to overcome the presumption at this time.

It is clear that both parents have made tremendous gains in addressing the issues they face and in complying with the requirements DHHS has identified and have a good and bonded relationship with [the child]. It is very clear that both parents have done everything they have been asked to do to date to reunify with [the child].

. . . .

[U]nless [the Department and the Guardian ad litem] are prepared to conclude that even a sex offender with a "very low risk" of re-offense should never be around children, then there must be a path forward identified to assist the [parents] to reunify with [the child].

[¶13] Based on these findings and its determination that the child was in jeopardy, the court concluded that additional services were required in order to achieve the goal of reunification. These services included, among others, a reassessment of the mother's protective capacity after the completion of the psychologist's evaluation; a second evaluation of the father's risk of reoffending; further sex offender treatment for the father; and "the development of clear protocols for coverage for [the mother] when she is not able to be present in the home with her children."

[¶14]  The parents each filed timely notices of appeal.  *See* M.R. App. P. 2B(c)(1), (2); 22 M.R.S. § 4006 (2018).

## II.  DISCUSSION

A.   Rebuttable Presumption

1.   Title 22 M.R.S. § 4035(2-A)

[¶15]   Pursuant to 22 M.R.S. §4035(2-A), a person's convictions or adjudications for certain sex offenses against minors give rise to a rebuttable presumption that any custody or contact by that person with a child would create circumstances of jeopardy.  The statute provides in part

There is a rebuttable presumption:

**A.** That the person seeking custody or contact with the child would create a situation of jeopardy for the child if any contact were to be permitted and that contact is not in the best interest of the child if the court finds that the person:

**(1)** Has been convicted of an offense listed in [19-A M.R.S. § 1653(6-A)(A) (2018)][3] in which the victim was a minor at the time of the offense and the person was at least 5 years older than the minor at the time of the offense except that, if the offense was gross sexual assault under [17-A M.R.S. § 253(1)(B)-(C) (2018)] . . . and the minor victim submitted as a result of compulsion, the presumption applies regardless

---

[3] These offenses include sexual exploitation of a minor, 17-A M.R.S. § 282 (2018); gross sexual assault, 17-A M.R.S. § 253 (2018); sexual abuse of minors, 17-A M.R.S. § 254 (2018); unlawful sexual contact, 17-A M.R.S. § 255-A (2018); visual sexual aggression against a child, 17-A M.R.S. § 256 (2018); sexual misconduct with a child under 14 years of age, 17-A M.R.S. § 258 (2018); solicitation of a child to commit a prohibited act, 17-A M.R.S. § 259-A (2018); or any offense  in another jurisdiction that "involves conduct that is substantially similar."  19-A M.R.S. § 1653(6-A)(A) (2018).

of the ages of the person and the minor victim at the time of the offense;

. . . and

**B.** That the parent or person responsible for the child would create a situation of jeopardy for the child if the parent or person allows, encourages or fails to prevent contact between the child and a person who:

> **(1)** Has been convicted of an offense listed in [19-A M.R.S. § 1653(6-A)(A)] in which the victim was a minor at the time of the offense and the person was at least 5 years older than the minor at the time of the offense except that, if the offense was gross sexual assault under [17-A M.R.S. § 253(1)(B)-(C)] and the minor victim submitted as a result of compulsion, the presumption applies regardless of the ages of the person and the minor victim at the time of the offense[.]

22 M.R.S. § 4035(2-A)(A)-(B).  In each instance, the parent or person seeking custody or contact with a child "may produce evidence to rebut the presumption." *Id.*

2.      Parental Rights and Due Process

[¶16]   The mother contends that the court erred in applying this presumption regarding the father's prior convictions for sex offenses against children, arguing that the court impermissibly shifted the burden of proof to the parents in violation of their due process rights.[4]   We review de novo

---

4  The Department contends that the mother did not adequately preserve her argument regarding the application of the statutory rebuttable presumption because it was not raised before the trial court.  Contrary to the Department's contention, we conclude that the issue was sufficiently raised

whether a statute is unconstitutional as applied. *In re Evelyn A.*, 2017 ME 182, ¶ 25, 169 A.3d 914.

[¶17]   To address the constitutionality of the application of this presumption during a jeopardy hearing, we first consider the interests at stake and the protections afforded parents in a child protection proceeding.  Only then can we evaluate the extent to which the presumption at issue here affects the parents' due process rights and whether any evidentiary burden to rebut the presumption may be placed on the parents during a jeopardy hearing.

[¶18]   In the context of child protection proceedings, "due process is a function of the private interest affected, the risk of error inherent in the process, and the nature of the governmental interest at issue in the process being challenged." *In re Emma B.*, 2017 ME 187, ¶ 18, 169 A.3d 945.  Because these factors vary depending on the interests at stake in each stage of a protection proceeding, "[t]he nature of that process" will vary among the stages.  *Id.*

[¶19]   It is well established that "parents have a fundamental liberty interest 'to make decisions concerning the care, custody, and control of their children,'" *Rideout v. Riendeau*, 2000 ME 198, ¶ 18, 761 A.2d 291 (quoting

---

before the court and, thus, properly preserved for discussion on appeal, because the Department's petition for a protection order cited the father's prior convictions, the court addressed the statutory presumption, and the mother sought, in effect, to rebut the presumption during the jeopardy hearing.

*Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000)), and that such a "fundamental and important right to raise one's children" is protected by the due process clause of both the United States Constitution and the Maine Constitution, *In re Robert S.*, 2009 ME 18, ¶ 13, 966 A.2d 894; *see In re Christmas C.*, 1998 ME 258, ¶ 10, 721 A.2d 629 ("the relationship between parent and child is constitutionally protected and . . . due process must be afforded to a parent before the state may interfere with that relationship.").

[¶20] A parent's "constitutional liberty interest in family integrity is not, however, absolute, nor forever free from state interference," *Rideout*, 2000 ME 198, ¶ 19, 761 A.2d 291, and "[t]his is true in great part because the rights of another person—the child—must also be protected by the State," *Pitts v. Moore*, 2014 ME 59, ¶ 12, 90 A.3d 1169; *see In re Emma B.*, 2017 ME 187, ¶ 12, 169 A.3d 945 (quotation marks omitted) (noting that the State has a "well-established parens partriae interest in guarding the well-being of children"); 22 M.R.S. § 4003 (2018) ("the right to family integrity is limited by the right of children to be protected from abuse and neglect."). Thus, the State has "a compelling interest in limiting, restricting, or even terminating a parent's rights when harm to the child will result from the absence of such governmental interference." *Pitts*, 2014 ME 59, ¶ 14, 90 A.3d 1169.

[¶21]  Accordingly, in addressing these varying interests, we have held that "judicial decisions affecting parenting rights *fall on a continuum* based on the nature and extent of the interests and rights affected, and the degree of finality of the different types of decisions."  *In re Emma B.*, 2017 ME 187, ¶ 19, 169 A.3d 945 (emphasis added) (quotation marks omitted).

[¶22]  A hearing on a petition to terminate a person's parental rights, for instance, falls on one end of this "continuum," *see Guardianship of Chamberlain*, 2015 ME 76, ¶ 23, 118 A.3d 229, at which the State "seeks not only to infringe on a fundamental liberty interest, but to end it,"  *In re Christmas C.*, 1998 ME 258, ¶ 12, 721 A.2d 629 (alterations omitted) (quotation marks omitted).  At that stage of the child protection proceedings, "the court's focus must be on the [state's] allegations of parental unfitness." *In re Scott S.*, 2001 ME 114, ¶ 21, 775 A.2d 1144.  Thus, a court's termination of a person's parental rights is subject to a higher burden of proof—clear and convincing evidence—because such a decision "may lead to a complete and final severance of the parent's relationship with [a] child." *In re Christmas C.*, 1998 ME 258, ¶ 13, 721 A.2d 629.

[¶23]  Our analysis of the application of a rebuttable presumption during a termination proceeding in *In re Evelyn A.*, 2017 ME 182, ¶¶ 24-32, 169 A.3d

914, was therefore guided by the finality of termination and the fundamental interests at stake in such a proceeding. There, in analyzing a presumption from which a court "may presume" a finding of parental unfitness, *see* 22 M.R.S. § 4055(1-A) (2018), we concluded that the presumption at issue was "akin to a 'presumption' in a criminal case" that allows a court to infer a finding of unfitness, but does not shift the burden of proof to the parents. *Id.* ¶¶ 30-31; *see In re Addilyn R.*, 2017 ME 236, ¶ 4, 176 A.3d 184 (stating that a court may treat the presumption as a "pathway to an inference"). When doing so, a court "may reach an ultimate finding of unfitness only if the evidence in its entirety supports that finding by clear and convincing evidence." *In re Evelyn A.*, 2017 ME 182, ¶ 31, 169 A.3d 914. As such, we held that the burden to demonstrate a finding of unfitness "remains always on the Department, and the parents have neither a burden of production nor a burden of persuasion or proof" regarding the statutory presumption in section 4055(1-A). *Id.* ¶ 32.

[¶24] In this case, the parents appeal from a jeopardy order, a judicial decision that "provide[s] protection to [a] child," *In re Christmas C.*, 1998 ME 258, ¶ 4, 721 A.2d 629, and, accordingly, is "on the less-intrusive end of [the] continuum" of decisions affecting parental rights, *In re Emma B.*, 2017 ME 187, ¶ 19, 169 A.3d 945. This is true because, unlike a proceeding for termination

of parental rights, the court's entry of a jeopardy order "infringes upon the parents' fundamental rights rather than terminates them."  *In re Matthew W.*, 2006 ME 67, ¶ 8, 903 A.2d 333, *overruled on other grounds by In re B.C.*, 2012 ME 140, ¶ 14 n.2, 58 A.3d 1118.  Such an order allows the State to "interced[e] in the family to protect the child," *In re Emma B.*, 2017 ME 187, ¶ 19, 169 A.3d 945 (quotation marks omitted), when a child is subject to "serious abuse or neglect, as evidenced by . . . serious harm or threat of serious harm," including the threat of "sexual abuse or exploitation," 22 M.R.S. § 4002(6), (10) (2018).  At a jeopardy hearing, "[a] child not only has an interest in family integrity . . . [but] has a substantial interest in protection from a jeopardous environment." *In re Emma B.*, 2017 ME 187, ¶ 18, 169 A.3d 945 (quotation marks omitted).  Thus, a parents' interests in the care and custody of their child is balanced against the state's interest in the welfare of that child, an interest that "is particularly acute in a jeopardy proceeding, where the immediate risk to the child's safety and welfare is at issue."  *Id.* ¶ 20.  As such, due process requires a lower burden of proof—preponderance of the evidence—when balancing the interests at stake at a jeopardy hearing.  *See* 22 M.R.S. § 4035(2); *In re Christmas C.*, 1998 ME 258, ¶ 13, 721 A.2d 629; *In re Sabrina M.*, 460 A.2d 1009, 1015-17

(Me. 1983). In support of the standard of preponderance of the evidence, we have previously explained that

> [a]lthough a stricter standard creates a smaller risk that parental rights will be erroneously curtailed in a child protection proceeding, it also creates a greater risk that the child will be forced to remain in or return to a jeopardous environment.

*In re Sabrina M.*, 460 A.2d at 1017.

[¶25] Further, a jeopardy order does not entail the same degree of finality as a termination proceeding. As a "nonpermanent interim order," *Guardianship of Chamberlain*, 2015 ME 76, ¶ 26, 118 A.3d 229, jeopardy orders "are neither final nor irrevocable . . . and may be, and frequently are, modified," *In re Emma B.*, 2017 ME 187, ¶ 19, 169 A.3d 945 (alterations omitted) (quotation marks omitted); *see In re Christmas C.*, 1998 ME 258, ¶ 13, 721 A.2d 629 (stating that "rehabilitating and reunifying the family is a normal part of [a jeopardy] order"). Statutory protections require continued review of a court's jeopardy order, *see* 22 M.R.S. § 4038(1) (2018), and the development of a reunification plan for a family, *see* 22 M.R.S. § 4041(1-A) (2018), increasing the chances that a parent's interests will only be "temporarily curtailed," *In re Sabrina M.*, 460 A.2d at 1017, after the issuance of a jeopardy order.

[¶26] Therefore, having determined that "the nature and extent of the interests and rights affected, and the degree of finality," *In re Emma B.*, 2017 ME

16

187, ¶ 19, 169 A.3d 945, in a jeopardy hearing are distinguishable from those in a termination proceeding, we decline to extend to a jeopardy proceeding our holding in *In re Evelyn A.*, 2017 ME 182, ¶¶ 24-32, 169 A.3d 914, a termination case, that "parents have neither a burden of production nor a burden of persuasion or proof" to rebut the statutory presumption.[5] Rather, we conclude that at a jeopardy hearing, where a court must determine whether a child faces circumstances of jeopardy to the child's health or welfare, the presumption in section 4035(2-A) does not violate the parents' due process rights by placing a part of the evidentiary burden on the parent—that is, a burden to produce evidence to rebut the presumption that some risk of jeopardy to a child is present as a result of a person's prior convictions for certain sexual offenses against minors. *Cf. In re Child of Nicholas G.*, 2019 ME 13, ¶¶ 23-24, 200 A.3d 783 (applying an analogous presumption pursuant to 19-A M.R.S. § 1653(6-B) (2018) in an order establishing parental rights and responsibilities, and affirming the court's finding that a parent did not rebut the presumption). Accordingly, at this stage of a child protection proceeding, where a child "has a

---

[5] We recognize, too, that the statutory language in the presumptions applicable to each proceeding allows for different levels of discretion in the court's application of the presumption. *Compare* 22 M.R.S. § 4035(2-A) (2018) (in a jeopardy proceeding, "[t]here *is* a rebuttable presumption . . . .") (emphasis added), *with* 22. M.R.S. § 4055(1-A) (2018) (in a termination proceeding, "[t]he court *may* presume . . . .") (emphasis added).

substantial interest in protection from a jeopardous environment," *In re Emma B.*, 2017 ME 187, ¶ 18, 169 A.3d 945 (quotation marks omitted), a parent or person seeking contact or custody may be required to produce some evidence to rebut the presumption that a person's convictions or adjudications for certain sexual offenses would create a situation of jeopardy for the child.[6] The ultimate burden—the burden of persuasion or proof—remains with the Department, however, and it is the Department that must prove, by a preponderance of the evidence, that a child faces circumstances of jeopardy. *See* 22 M.R.S. 4035(2).

3. Court's Application of the Presumption

[¶27] In this case, after finding that the father had been convicted of sexual offenses against minor children, the court applied the statutory presumption and stated that "the parents must rebut the presumption." In applying the presumption, the court found that

> [t]he risk analysis presented by [the psychologist] apparently represents the best available measures of risk of re-offense and alone would present a fair prima facie case to rebut the presumption of [j]eopardy provided by [22 M.R.S. § 4035(2-A)].

---

[6] We do not disturb our holding in *In re Evelyn A.*, 2017 ME 182, ¶¶ 24-32, 169 A.3d 914, and we reiterate that, in light of the finality of a termination of parental rights proceeding, no burden may be placed on the parents at that stage of a child protection proceeding. The burden in a termination hearing "remains always on the Department, and the parents have neither a burden of production nor a burden of persuasion or proof." *Id.* ¶ 32.

> However, the court finds it has not been established that [the mother] has the necessary protective capacity (to be determined in part by the parental capacity evaluation) nor logistical capability needed to overcome the presumption at this time.

Thus, contrary to the mother's contention, the court did not conclude that the father rebutted the statutory presumption. Rather, the court determined that the psychologist's risk analysis "*alone* would present a fair prima facie case [for the father] to rebut the presumption of jeopardy" (emphasis added). However, the psychologist's report and testimony were not the *only* evidence before the court. The Department presented additional evidence that supports the court's determination that the child was then in circumstances of jeopardy based on the father's convictions, and the mother's inability to protect the child from harm.[7] In light of the court's findings, it is clear that the court did not shift—to either the mother or the father—the Department's burden to prove, by a preponderance of the evidence, that the child was in circumstances of jeopardy.

[¶28] Therefore, the court did not err in applying the presumption in section 4035(2-A), nor did it violate the parents' due process rights.

---

[7] At the time of the hearing, the court was awaiting the results of a parental capacity evaluation of the mother.

B.     Sufficiency of the Evidence

[¶29]   Having concluded that the court did not err in applying the presumption in section 4305(2-A), we now address whether the court's ultimate determination, by a preponderance of the evidence, of jeopardy was clearly erroneous.  *See* 22 M.R.S. § 4035(2); *In re Nicholas S.*, 2016 ME 82, ¶ 9, 140 A.3d 1226.  Each parent contends that the evidence was not sufficient to support the court's findings determining that the child was in circumstances of jeopardy.

[¶30]  We review the court's findings for clear error and "will affirm the decision unless there is no competent record evidence that can rationally be understood to establish as more likely than not that the child was in circumstances of jeopardy to his [or her] health and welfare."  *In re Nicholas S.*, 2016 ME 82, ¶ 9, 140 A.3d 1226 (quotation marks omitted).

[¶31]  A court's determination that a child is in circumstances of jeopardy must be supported by a preponderance of the evidence.  22 M.R.S. § 4035(2).  "Jeopardy" is defined as "serious abuse or neglect, as evidenced by . . . serious harm or threat of serious harm."  22 M.R.S. § 4002(6).  "Serious harm" means serious physical injury, "serious mental or emotional injury," or "sexual abuse or exploitation."  *Id.* § 4002(10), (11).

[¶32]  When determining jeopardy, a court may rely on both past and prospective evidence of serious harm to a child.  *See In re E.L.*, 2014 ME 87, ¶ 14, 96 A.3d 691; *see also In re Tabitha R.*, 2003 ME 76, ¶ 7, 827 A.2d 830 ("Evidence of past jeopardy is relevant to the future, and in the case of a custodial parent it is highly probative, but the question before the court is necessarily whether there is prospective jeopardy.").  "In child protection proceedings, what is past is often prologue regarding the threat of serious harm posed by [a] parent." *In re E.L.*, 2014 ME 87, ¶ 14, 96 A.3d 691.

[¶33]  Contrary to the parents' contentions, the court properly considered all of the evidence presented, and this evidence was sufficient to support the court's determination that jeopardy existed.  Here, that determination was supported by past evidence of the father's convictions for sexual offenses against minor children and the mother's willingness to allow her children to spend time with convicted sex offenders.  Additionally, there was evidence of the prospective risk of reoffense by the father and evidence that the mother would be unable, at the time of the hearing, to exhibit the "protective capacity . . . []or logistical capability" necessary to adequately protect her child from the risk of serious harm.  Although the psychologist testified that the father presented a "very low risk of reoffending," there is,

nonetheless, sufficient evidence in the record to support the court's findings establishing jeopardy, by a preponderance of the evidence, as to both parents. *See* 22 M.R.S. § 4035(2); *In re E.A.*, 2015 ME 37, ¶¶ 8-9, 114 A.3d 207.

[¶34] We reiterate that, in applying the presumption in section 4035(2-A), the ultimate burden of persuasion in a jeopardy hearing must always remain with the Department. *See* 22 M.R.S. § 4305(2). It is only the burden of production—a burden to produce evidence to rebut the presumption that some risk of jeopardy to a child is present as a result of a person's prior convictions for certain sexual offenses against minors—that may be shifted to a parent in a jeopardy hearing, and this burden only arises when the court applies the presumption in section 4035(2-A). Here, there was "competent record evidence that can rationally be understood to establish as more likely than not that the child was in circumstances of jeopardy to his or her health and welfare," *In re Nicholas S.*, 2016 ME 82, ¶ 9, 140 A.3d 1226 (alterations omitted) (quotation marks omitted), and this evidence demonstrated a risk of serious harm to the child. As such, the court did not clearly err in determining that the child was at risk of "serious harm or [a] threat of serious harm" in the custody of the parents. 22 M.R.S. §§ 4002(6), 4035(2).

22

## C.    Jeopardy Order

[¶35]  We note, too, that the court's jeopardy order provided a balanced, measured response to the interests at stake in this proceeding and to the level of risk to the child.  The court found that "there must be a path forward identified to assist the [parents] to reunify with [the child]" and ordered additional services for the parents in order to achieve this goal of reunification, including "[i]ncreased monitored or supervised visits," further evaluations of the parents, and the development of "clear protocols" to provide care for the child when the mother will not be present in the home.  Participation in such services ensures that, through the continued reunification efforts of the Department and the parents, this "path forward" for the mother and father will help alleviate any circumstances of jeopardy and adequately protect the child's health and safety.

The entry is:

Judgment affirmed.

Julian Richter, Esq., Richter Law, LLC, Gardiner, for appellant mother

James M. Mason, Esq., Handelman & Mason LLC, Brunswick, for appellant father

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

West Bath District Court docket number PC-2018-24
FOR CLERK REFERENCE ONLY