MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2020 ME 54
Docket:         Kno-19-425
Submitted
  On Briefs:    February 26, 2020
Decided:        April 28, 2020
Revised:        June 23, 2020

Panel:          MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

IN RE CHILD OF JILLIAN T.

GORMAN, J.

[¶1]  Jillian T. appeals from a judgment of the District Court (Rockland, *Sparaco, C.J.*) finding that she presents jeopardy to her child pursuant to 22 M.R.S. § 4035 (2018).  The mother challenges the court's finding of the date on which the child is considered to have entered foster care within the meaning of 22 M.R.S. §§ 4038-B(1)(B), 4041(1-A), 4052(2-A)(A)(1) (2018).  The Department of Health and Human Services has moved to dismiss the appeal, arguing that the court's finding is not appealable.  We deny the Department's motion to dismiss because the jeopardy order is an appealable final judgment, and we agree with the mother that the court miscalculated the date on which her child is considered to have entered foster care.  We therefore vacate the judgment in part.

## I. BACKGROUND

[¶2]    The Department initiated child protection proceedings and requested a preliminary protection order (PPO) as to this child on July 4, 2019, alleging that the child—then eleven months old—had suffered from several nonaccidental and unexplained bone fractures and an injury to his ear, for which the mother had not provided adequate medical care.[1]  *See* 22 M.R.S. §§ 4032, 4034(1) (2018).  The court (*E. Walker, J.*) entered a preliminary protection order that day placing the child in the Department's custody.  *See* 22 M.R.S. § 4034(2) (2018).  The mother waived her right to a summary preliminary hearing.  *See* 22 M.R.S. § 4034(4) (2018).

[¶3]  With the mother's agreement, the court (*Sparaco, C.J.*) entered an order on October 10, 2019, finding, by a preponderance of the evidence, that the child is in jeopardy to his health or welfare based on his serious and unexplained physical injuries, a threat of serious emotional injury posed by the mother, and the mother's deprivation of adequate medical and developmental care to the child.  *See* 22 M.R.S. § 4035.  In the jeopardy order, the court also found that the child entered foster care on July 4, 2019, the date that the PPO

---

[1] The Department also alleged jeopardy to the child by the father.  The court later found jeopardy as to the father, but because he does not appeal from that judgment, we address the facts and procedure only as to the mother.

was signed. On the mother's motion, the court later clarified by a corrected jeopardy order dated November 8, 2019, that, although the mother had agreed to the jeopardy findings, the mother had not agreed to the finding regarding the child's date of entry into foster care. The mother appeals, challenging only the finding of the date of the child's entry into foster care.[2] *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶4] The date on which a child is "considered to have entered foster care" is the basis for the calculation of three statutory deadlines in a child protection matter: (1) the Department (and the parents) must initiate rehabilitation and reunification efforts on that date, 22 M.R.S. § 4041(1-A); (2) the court must conduct a permanency planning hearing within twelve months after that date, 22 M.R.S. § 4038-B(1)(B); and (3) the Department must file a petition seeking the termination of parental rights before the end of the fifteenth month after

---

[2] The Department has moved to dismiss the appeal as interlocutory, arguing that a challenge to the court's finding of the date of entry into foster care is not an appealable final judgment pursuant to 22 M.R.S. § 4006 (2018) because it is not necessary to the entry of an otherwise appealable jeopardy order. *See In re L.R.*, 2014 ME 95, ¶ 9, 97 A.3d 602 ("Section 4006 unequivocally provides that in child-protective cases orders other than termination orders, jeopardy orders, or orders authorizing medical treatment are not appealable." (quotation marks omitted)). We disagree. The mother challenges a factual finding in a jeopardy order entered pursuant to 22 M.R.S. § 4035 (2018), and a jeopardy order entered pursuant to section 4035 is appealable pursuant to section 4006. *See In re B.C.*, 2012 ME 140, ¶¶ 9-11, 15, 58 A.3d 1118 (allowing a parent to challenge on appeal an aggravating factor finding that was made within, but not necessary to, a jeopardy order). We therefore deny the Department's motion to dismiss the appeal.

4

that date if the child has been in foster care for fifteen of the most recent twenty-two months, 22 M.R.S. § 4052(2-A)(A)(1). Because the date carries such important consequences, we must be precise in determining it.

[¶5] The statute defines the date on which a child is "considered to have entered foster care" as the earlier of two dates—"the date of the first judicial finding that the child has been subjected to child abuse or neglect" or "the 60th day after the child is removed from the home." 22 M.R.S. §§ 4038-B(1)(B), 4041(1-A). Here, there is no dispute that the child was removed from the home on July 4, 2019. The court found that the child entered foster care on that date, meaning that it interpreted "the date of the first judicial finding that the child has been subjected to child abuse or neglect" to refer to the date on which the PPO was granted. 22 M.R.S. §§ 4038-B(1)(B); 4041(1-A); *see* 22 M.R.S. § 4034(2). The mother contends that the first judicial finding of abuse or neglect instead occurred upon the entry of the jeopardy order on October 10, 2019.[3]

[¶6] Thus, although the jeopardy order was entered with the agreement of the mother, the mother challenges the court's determination that the child entered foster care on July 4, 2019, a finding to which the mother did not agree.

---

[3] Sixty days after the PPO was signed was September 2, 2019. *See* 22 M.R.S. §§ 4038-B(1)(B), 4041(1-A) (2018).

We review the court's factual findings for clear error, and we will not disturb those findings if there is any competent record evidence to support them. *In re Child of Ryan F.*, 2020 ME 21, ¶¶ 29-30, 224 A.3d 1051. The court's determination of the date on which the child entered foster care reflects its interpretation of statutory provisions, however, which we consider de novo as a matter of law, first by examining their plain language. *See In re Alivia B.*, 2010 ME 112, ¶¶ 7, 9, 8 A.3d 625.

[¶7] The plain language of the statute provides an unambiguous answer. Not infrequently, children who are subject to child protection orders are first removed from their homes and placed in foster care as a result of PPOs. *See* 22 M.R.S. §§ 4034(2), 4036(1)(F) (2018). To construe a PPO as the first judicial finding of abuse or neglect would mean that the date a child is considered to have entered foster care refers to the earlier of a particular event (the entry of the PPO that resulted in the child's removal from the home) or sixty days after that same event (sixty days after the entry of the PPO). This reading of the statute creates patently absurd results by which two alternatives are categorically narrowed to one; if the PPO triggers the operative date, then sixty days after the PPO is entered will *always* be later than the date on which the PPO is entered. Determining that the child has entered foster care on the earlier

6

of the two alternatives renders the sixty-day alternative to be entirely meaningless. This contradicts one of our basic rules of statutory construction—that no language should be rendered surplusage. *See In re Child of Nicholas P.*, 2019 ME 152, ¶ 36, 218 A.3d 247 ("A statute should be interpreted to avoid surplusage, which occurs when a construction of one provision of a statute renders another provision unnecessary or without meaning or force." (quotation marks omitted)).

[¶8] Instead, we read the plain language to preserve the two alternatives for calculating the date in a way that avoids absurd results and creates no surplusage.[4] This is accomplished by interpreting the "date of the first judicial

---

[4] If this analysis of the plain meaning were not sufficiently dispositive, an examination of the history of the language would be. *See In re Child of Nicholas P.*, 2019 ME 152, ¶ 32, 218 A.3d 247 (stating that we consider legislative history and other indicia of legislative intent when the statutory language is ambiguous). The language at issue is directly quoted from federal law. The Child and Family Services and Child Protection Act, 22 M.R.S. §§ 4001 to 4099-I (2018), was enacted in compliance with numerous provisions in the federal Social Security Act, 42 U.S.C.S. §§ 301-1397mm (LEXIS through Pub. L. No. 116-108), as amended by the Adoption and Safe Families Act of 1997, Pub. L. No. 105-89, 111 Stat. 2115. *See* P.L. 1979, ch. 733, § 18 (effective July 3, 1980). In particular, Title IV-E of the Social Security Act provides federal funding to states, like Maine, whose foster care systems meet certain requirements, 42 U.S.C.S. §§ 670-679c, which requirements are further elucidated in federal regulations, *see* 45 C.F.R. §§ 1356.21, 1356.22 (LEXIS through Mar. 23, 2020).

Among other funding eligibility requirements, a state must enact procedural safeguards regarding the time by which permanency hearings must be held and termination of parental rights petitions must be filed, both of which are established by reference to the date the child is "considered to have entered foster care." 42 U.S.C.S. § 675(5)(C); *see* 45 C.F.R. §§ 1356.21(b)(2), (i)(i)(A), 1356.22(a); *see also New York ex rel. N.Y. State Office of Children & Family Servs. v. U.S. Dep't of Health & Human Servs.' Admin. for Children & Families*, 556 F.3d 90, 100 (2d Cir. 2009). The Social Security Act defines the date that a child is considered to have entered foster care as "the earlier of . . . (i) the date of the first judicial finding that the child has been subjected to child abuse or neglect; or (ii) the date that is 60 days after the date on which the child is removed from the home." 42 U.S.C.S. § 675(5)(F). The Code of Federal Regulations contains the same language, along with the additional

finding that the child has been subjected to child abuse or neglect" as the date on which a jeopardy order is entered.[5]  22 M.R.S. §§ 4038-B(1)(B), 4041(1-A). This is also the method of calculation that we have used in earlier decisions.  In *In re Thomas D.*, for example, we concluded that the first judicial finding of abuse or neglect occurred via the jeopardy order rather than the PPO: "[The child] entered foster care for purposes of section 4041(1-A)(A)(1)(a) no later than February 27, 2002, the date of the jeopardy order, which was less than

---

explanation that "[*a*] *title IV-E agency may use a date earlier than that required in this definition, such as the date the child is physically removed from the home.*"  45 C.F.R. § 1355.20(a) (LEXIS through Mar. 23, 2020) (emphasis added).

Here lies the rub.  This federal regulation expressly provides that the date that a child is physically removed from the home *may be earlier than that for which either existing date alternative provides* in calculating the date on which a child is considered to have entered foster care.  Because the federal language has already been expressly explained *not* to refer to the date that the child is physically removed from the home—an event that, in Maine, usually occurs as the result of a PPO—Maine's identical language must be interpreted the same way.  *See Caribou Sch. Dep't v. Caribou Teachers Ass'n*, 402 A.2d 1279, 1285 (Me. 1979) (interpreting a Maine statute "in a similar manner" as a federal statute with "nearly identical language"); *Weeks v. State*, 267 A.2d 641, 646 (Me. 1970) (stating that "practically identical language" in a Maine provision and a federal provision render the two provisions "coextensive in meaning"); *cf. Levis v. Konitzky*, 2016 ME 167, ¶ 14 n.5, 151 A.3d 20 (distinguishing the result in matters decided based on a federal rule because Maine's version of that rule contained different language).  Although states are free to adopt the date on which the child is physically removed from the home as the date on which the child is considered to have entered foster care pursuant to 45 C.F.R. § 1355.20(a), any state doing so would obviously have to use language different from the federal provisions.

[5]  Interpreting the jeopardy order as the first finding of abuse or neglect need not delay the provision of rehabilitation and reunification services.  *See* 22 M.R.S. § 4041(1-A). In the vast majority of cases involving PPOs, the Department has *already* been providing services to the family.  Even if the Department does wait to provide services until after a jeopardy proceeding—an unlikely event—measuring the date the child is considered to have entered care as the jeopardy date or sixty days after the PPO also extends the time within which the Department is required to seek a permanency planning order and file a termination of parental rights petition, an extension that may well benefit family reunification.  *See* 22 M.R.S. §§ 4038-B(1)(B), 4052(2-A)(A)(1) (2018).

8

sixty days after he was taken into the Department's custody pursuant to the ex parte preliminary protection order entered January 7, 2002."  2004 ME 104, ¶ 27, 854 A.2d 195.

[¶9]  We conclude that the first judicial finding of abuse or neglect was on October 10, 2019, the date that the jeopardy order was entered.  The child was removed from the home on July 4, 2019; sixty days after the child's removal from the home was therefore September 2, 2019.  As between the October 10, 2019, jeopardy date and the September 2, 2019, sixty-day date, September 2, 2019, is earlier.  The September 2, 2019, date is therefore the date on which this child is considered to have entered foster care within the meaning of sections 4038-B(1)(B), 4041(1-A), and 4052(2-A)(A)(1).  We therefore vacate only the portion of the jeopardy order containing that finding, and we remand for entry of an order that reflects September 2, 2019, as the date on which this child is considered to have entered foster care.[6]  We affirm the jeopardy order in all other respects.

The entry is:

> Judgment vacated.  Remanded for entry of a
> jeopardy order consistent with this opinion.

---

[6] Because we vacate the judgment on the issue of the date the child is considered to have entered foster care, we need not address the mother's additional argument regarding due process.

---

Paula Hopkins, Esq., West Rockport, for appellant mother

Aaron M. Frey, Attorney General, and Zack Paakkonen, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Rockland District Court docket number PC-2019-17
FOR CLERK REFERENCE ONLY